IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tower Access Group, LLC,       :
            Appellant    :
                             :   No. 1478 C.D. 2017
       v.             :
                             :   Submitted: June 4, 2018
The South Union Township    :
Zoning Hearing Board        :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION BY
JUDGE McCULLOUGH                  FILED: July 30, 2018

      Tower Access Group, LLC (TAG) appeals from the September 22, 2017 order of the Court of Common Pleas of Fayette County (trial court) affirming the decision of the South Union Township Zoning Hearing Board (Board), which denied TAG's application for a special exception to build a communication tower in South Union Township (Township).

**Facts and Procedural History**

      The underlying facts are not in dispute and are garnered from the Board's decision, the trial court's original opinion and order dated September 22, 2017, as well as the trial court's Pa.R.A.P. 1925 opinion filed on December 15, 2017. On May 16, 2016, TAG applied for, and was granted, a zoning certificate to build a communication tower in a wooded area off 1 Grace Lane in the Township on

property owned by Grace Brethren Church of Uniontown.  Specifically, TAG sought to lease 10,000 square feet of this property from the church to build a 180-foot monopole tower which would have an overall height of 188 feet.  Once constructed, Verizon Wireless intended to install its antennas and equipment on the tower, including a 12-foot by 20-foot platform with a canopy and equipment cabinets.  TAG would access the tower via a proposed gravel access road through the woods on the property and there would be a parking area nearby for service technicians.  The initial construction of the tower was expected to last four to six weeks, after which the service technicians would visit the tower approximately once per month.  TAG chose the particular location for the tower in order to improve cellular coverage in the area.

However, the Township's Board of Supervisors subsequently revoked TAG's zoning certificate on July 27, 2016, noting that the proposed site for the tower was located in an R-1 Zone, which is reserved for residences and establishments that provide services to the community.  Other types of construction in an R-1 Zone, such as public service facilities, are permitted by special exception.  The Board of Supervisors determined that TAG's tower constituted a public service facility.  TAG thereafter filed an application with the Board seeking to appeal the action by the Board of Supervisors and, alternatively, seeking a special exception for the tower.

**Board's Public Hearing**

The Board conducted a public hearing with respect to TAG's application on December 15, 2016.  At this hearing, the Township first presented the testimony of John Over Jr., the Township's engineer.  After complaints by residents, the Township's Board of Supervisors requested that Over review TAG's original application and the zoning certificate that was issued based upon this application.

2

Upon completion of this review, Over sent a letter to TAG dated July 27, 2016, revoking the zoning certificate based upon his determination that the proposed tower use was not defined in the South Union Township Zoning Ordinance (Ordinance)[1] and was most similar to a public service facility, which is only permitted by special exception in an R-1 Zone. Over noted that at his request, Joseph Burke, the Township's Zoning Officer, sent an identical letter to TAG that same day. (Reproduced Record (R.R.) at 19a-24a.)

On cross-examination, Over explained that the decision to revoke the zoning certificate originated with complaints from Township residents to the Board of Supervisors with respect to the issuance of the certificate and no posting of the property. Over could not cite to any specific provision of the Ordinance that authorizes the Board of Supervisors to conduct an administrative review when a use is neither permitted nor prohibited in the Ordinance, although he testified that such a provision existed in both the Ordinance and the Municipalities Planning Code (MPC).[2] (R.R. at 25a-31a.)

TAG then presented the testimony of Matthew Smith, a professional civil engineer and owner of Red Swing Consulting Services, the company that prepared the plans attached to TAG's original application for a zoning certificate filed with the Township. Smith described the area around the proposed tower as a wooded area in between a shopping center and country club, with an elementary school to the south and residential properties to the north. He described the condition of the property as heavily wooded. He noted that the plans call for a 50-foot by 70-

---

[1] In compliance with an order of this Court dated December 19, 2017, TAG filed a copy of the Ordinance with the Court.

[2] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202.

3

foot gravel compound area, to be accessed by a gravel road, and a 180-foot steel monopole placed in the center of the compound area with an 8-foot lightning rod on top. (R.R. at 35a-39a.)

He did not anticipate any traffic concerns resulting from the site, stating that, after the initial construction time of four to six weeks, service technicians would visit the site maybe once a month. He also noted that the plans called for a 12-foot by 20-foot equipment platform on a concrete pad with three outdoor cabinets each about the size of a refrigerator and that the compound area would be secured by a locked gate and a six-foot-high wood slat fence that would also assist in concealing the equipment. With regard to setbacks, Smith testified that the site was irregularly shaped, similar to an arrowhead, and would be located 40 feet from the western property line, 800 feet from the northern property line, and 1,200 feet from the eastern property line. He also stated that the site was 339 feet from Foreman Avenue, the closest public right-of-way. (R.R. at 40a-43a.)

On cross-examination, Smith acknowledged that neither he nor his company prepared TAG's original application for a zoning certificate, only the plans attached to the same. He indicated that the exact width of the base of the tower was determined by a structural engineer based on many factors, including wind load, snow load, and other geotechnical conditions. He also indicated that the optimal height of the tower was determined by a radio frequency engineer. He admitted that he did not visit the proposed site prior to submission of the plans but that another representative visited and conducted a survey of the entire church property. He stated that Verizon Wireless will be the sole user of the tower once erected but that there was room for other carriers. Additionally, Smith testified that the leased site

4

consisted of 10,000 square feet and would include an access easement for the proposed gravel road, which would be 12 feet wide. (R.R. at 45a-62a.)

TAG next presented the testimony of Shreyas Patel, a radio frequency/wireless engineer for Verizon Wireless. He explained that Verizon Wireless sought to improve in-building coverage, both residential and commercial, in the area of the proposed tower. He identified a color-coded map that he prepared for the benefit of the Board identifying the areas of in-building coverage in and around the Township and the desired areas where Verizon Wireless sought to improve this coverage via installation of the tower. He noted that improving in-building coverage, especially with respect to commercial buildings constructed of steel and concrete, requires a stronger signal. He included a map that showed the areas that would be reached by the new tower, which he said would definitely improve the in-building coverage in those areas. (R.R. at 64a-73a.)

On cross-examination, Patel admitted that he did not visit the area but stated that a site acquisition person actually investigated the proposed location. He identified the tan or yellow shaded areas of his color-coded map as those where indoor wireless coverage was weak or unreliable. He noted that such areas were determined by measuring signal strength. However, he acknowledged that the maps he provided extended beyond the limits of the Township. He also acknowledged that ground elevation is an important consideration for placement of a tower, such as when dealing with a low-lying valley area, which would require a higher tower. He noted that he did visit the proposed location about a month before the December 15, 2016 hearing and did not observe any obstructions in the area that would impact the coverage to be provided by the new tower. He described his general role as advising the individual responsible for site acquisition regarding areas where a tower

5

would be beneficial and then reviewing any potential sites. Patel further admitted that he had no statistics or information with him regarding complaints about coverage in the area from Verizon Wireless users. He characterized the proposed location of the new tower as the ideal location that would provide good coverage for the area. (R.R. at 73a-90a.)

On re-direct examination, Patel explained that Verizon Wireless needed increased coverage and capacity in the area, the latter representing the maximum number of calls or data transmissions a tower can handle. (R.R. at 91a-92a.)

TAG next presented the testimony of Scott Devlin of Unified Business Technologies, Inc., who was hired by Verizon Wireless as a site acquisition/real estate consultant. He testified that Verizon Wireless had negotiated a lease agreement with Grace Brethren Church of Uniontown, the owner of the property where the proposed tower would be located. He described how Verizon Wireless provided him with a search area request form, which identifies certain mapping coordinates where a new site is desirable. He noted that the proposed site was the primary candidate, but that he had investigated other sites within the Township. Subsequent to execution of the lease agreement, Devlin explained that TAG sought and obtained a zoning certificate for the proposed tower. He identified the July 27, 2016 letter from Over revoking the zoning certificate despite no known appeal of the issuance of the same, as well as TAG's letter in response dated August 3, 2016, questioning Over's authority, as Township engineer, to revoke the zoning certificate. He also identified the identical letter from Burke, the Township's Zoning Officer, also dated July 27, 2016, revoking the zoning certificate. Finally, he noted that survey work and design work were undertaken in between the grant and revocation of the zoning certificate. (R.R. at 100a-09a.)

6

On cross-examination, Devlin confirmed that he was not an employee of TAG. He stated that he received the search area request form from Verizon Wireless in late February or early March of 2016. He explained that the form includes a map pinpointing the area where a new tower is needed, along with the ground elevation and tower height Verizon Wireless was proposing. He reiterated that he looked at other sites for the proposed tower, such as a nearby shopping center. He did describe the trees on the property owned by Grace Brethren Church of Uniontown as dictating the height of the proposed tower. He explained that he made the original deal with the church and then turned it over to TAG. (R.R. at 109a-17a.)

Devlin testified that his company also prepared TAG's original application for the zoning certificate, which was not signed. He admitted that the application referenced a diesel generator as a back-up power source. Additionally, he acknowledged that he could not identify, without further research, any specific actions taken by TAG in between the grant and revocation of the zoning certificate. He indicated that the lease for the proposed site was terminable without further payment liability if TAG could not obtain the necessary permits or other approvals required to build the tower. Further, he acknowledged that the zoning certificate was never posted at the property despite language specifically requiring that the same be prominently displayed on the premises. (R.R. at 117a-34a.)

Several objectors (Objectors) appeared at the hearing, represented by counsel. At the conclusion of Devlin's testimony, counsel for Objectors recalled Over to testify. Over testified that there are zones within the Township where cell phone towers are permitted by special exception and that other towers and antennas do exist in the Township. He estimated that approximately 57% of the Township is zoned in such a manner. He identified a map of the various zoning districts within

7

the Township. He opined that TAG would require subdivision approval for the leased area of the property. He noted that Objectors are owners of properties that abut the church property and that five of these properties, which included residences, were within 188 feet of the proposed tower. (R.R. at 138a-49a.)

On cross-examination, Over admitted that the letters revoking the zoning certificate made no mention of land development or subdivision of the property. He also acknowledged that the Ordinance does not contain a requirement that a tower maintain a setback equal to its height. (R.R. at 149a-50a.) On re-direct examination, he agreed that the Board could impose reasonable conditions on the grant of a special exception and that a setback equaling the height of the tower would be reasonable. (R.R. at 150a-51a.)

Objectors next called Vincent DiBease, one of the neighboring landowners. He testified that his property was approximately 200 feet from the proposed tower site and that the tower would be visible from his property. He characterized the proposed site as sparse woods and noted that people walk through that area. He described diesel generators, of which he was very familiar having worked at the Hatfield Power Station, as very noisy and something that would disturb his sleep if activated during the night. He also believed that the tower would decrease the value of his property and create an eyesore. He noted that he never observed the zoning certificate posted on the church property. (R.R. at 154a-58a.)

On cross-examination, DiBease explained that he and other people he had spoken to did not want to live next to a cell tower, citing the risk of the tower falling. He admitted that he was unaware which model diesel generator would be installed at the site, but reiterated that open-air generators would make a lot of noise. (R.R. at 158a-61a.)

8

Objectors then called David Scott, another neighboring landowner. He estimated that his property was approximately 180 feet or less from the church's property. He identified a photograph taken from his back porch through the woods which he stated shows where the tower would be located. Similar to DiBease, he did not consider the area to be heavily wooded and stated that nearby residents would most certainly hear noise from a diesel generator. Additionally, Scott noted that he was in the business of developing properties and opined that the tower would have a negative impact on the value of his property. He indicated that he has an agreement to purchase adjoining property in order to develop housing/apartments, but he doubts that he would continue with this development if the tower were to be approved. Further, he noted that he is a customer of Verizon Wireless, that he was a dealer for the company, and that there were no coverage problems in the area. He also noted that he did not see a posting of a zoning certificate on the property and would have appealed it if he did. Finally, he described the area around his house as very windy, noting that he lost his roof on one occasion and had seen 18- to 20-inch diameter trees near his house snapped due to wind. (R.R. at 162a-70a.)

On cross-examination, Scott admitted that he was a Verizon Wireless dealer 20 years ago and was not aware of changes in the industry since that time. He confirmed that he had only an oral agreement to purchase neighboring property and nothing was reduced to writing. He also admitted that he was unaware of the precise structural standards to which the tower must be built, although he cited to an instance of a Verizon Wireless tower collapsing six years ago near the West Virginia border. (R.R. at 170a-71a.)

9

**Board's Decision**

At the conclusion of the hearing, the Board voted to deny TAG's appeal from the revocation of the zoning certificate and its application seeking a special exception. (R.R. at 176a-77a, 183a.) The Board subsequently issued a written decision on January 25, 2017, dividing its findings between TAG's appeal of the revocation of its zoning certificate and the denial of its application for a special exception. Regarding the former, the Board found that the proposed cell tower constituted a public service facility under the Ordinance, which required use by special exception. (Board's Findings of Fact Nos. 2-3.) The Board also found that there was no testimony from individual cell phone users on behalf of TAG relating to poor or inadequate reception/coverage in the area of the proposed tower. (Board's Findings of Fact Nos. 6-8.) Additionally, the Board noted that the application for the zoning certificate was not signed as required by the Ordinance and that the zoning certificate was not properly posted on the church property. (Board's Findings of Fact Nos. 9-10.)

Regarding the special exception, the Board again found a lack of testimony from the general public or users of Verizon Wireless that the cellphone service in the area was poor or that additional service was necessary in the area. (Board's Finding of Fact, Special Exception, No. 1.) The Board noted that the testimony of TAG's witnesses failed to establish a need for the tower. (Board's Finding of Fact, Special Exception, No. 2.) The Board referenced a lack of witnesses to establish "that the location, size, use, nature and intents of the operations involved in or conducted in connection with its site layouts would not be hazardous, inconvenient or conflict with the normal traffic on the residential streets." (Board's Finding of Fact, Special Exception, No. 3.) The Board also found that TAG "did

10

not take into account convenient routes of pedestrian traffic, particularly of children, since the tower would be adjoining Hatfield public school." *Id.*

The Board further cited to a lack of testimony that the location and height of the tower, as well as the walls and fences surrounding it, would not hinder or discourage the appropriate development and use of adjacent land and buildings, or that the use of the property and erection of the tower would not substantially increase the burden on public utilities/facilities. (Board's Findings of Fact, Special Exception, Nos. 4-5.) The Board noted that DiBease and Scott both testified that the tower would discourage development in the area, that Patel stated that no complaints had been received from Verizon Wireless customers about coverage problems in the area, and that the record reflected that there was another potential location for the tower that was never pursued. (Board's Findings of Fact, Special Exception, Nos. 6-9.)

Based upon these findings, the Board concluded that the proposed site "was not suitable for the construction and use as set forth in the application"; that the "proposed use has not met the requirements of the [Township's] Zoning Ordinance"; that "[t]here was no testimony presented . . . by [TAG] to meet the burden of proving that a special exception should be granted in the instant case"; and that TAG failed to present any testimony that contradicted "the testimony presented by the Objectors and the Township that the special exception should not be granted." (Board's Conclusions of Law Nos. 1-3, 5.) More specifically, the Board concluded that TAG's proposed use did not meet any of the standards set forth in sections 400 and 602.4 (regarding special exceptions) of the Township's Ordinance. (Board's Conclusions of Law No. 7.) As to TAG's appeal from the revocation of the zoning certificate, the Board concluded that the original application for the same was not

11

signed and that the zoning certificate was not properly posted. (Board's Conclusions of Law No. 4.)

### TAG's Appeal to the Trial Court and this Court

TAG thereafter appealed to the trial court, after which the Township filed a notice of intervention. The trial court did not take any additional evidence. By opinion and order dated September 22, 2017, the trial court affirmed the Board's decision and dismissed TAG's appeal. The trial court emphasized the lack of any signature on the original application for the zoning certificate. The trial court agreed with the Board that the proposed tower use constituted a public service facility, which was only permissible by special exception in an R-1 Zone. The trial court also agreed with the Board that TAG failed to meet the requirements for a special exception under section 602.4 of the Township's Ordinance. The trial court concluded that the record contained substantial evidence that the proposed tower use would adversely impact the health, safety, and welfare of the surrounding area. Thus, the trial court held that the Board did not err or abuse its discretion in denying TAG's application for a special exception.

TAG thereafter filed a notice of appeal to this Court. The trial court directed TAG to file a statement of errors complained of on appeal, and TAG complied. In this statement, TAG alleged that the Board erred and/or abused its discretion in concluding that it did not meet its burden of proof with respect to the requirements of section 602.4 of the Township's Ordinance. More specifically, TAG argued that section 602.4 constituted general criteria applicable to special exception applications and, hence, the burden was on Objectors to establish any general detriments to the proposed use. TAG noted that section 602.4 did not expressly place the burden of persuasion regarding general detrimental effects to

12

health, safety, and welfare on an applicant. In other words, TAG argued that it did not have either the burden of presentation or proof with respect to the requirements of this section; rather, an applicant has such burdens only as to specific requirements of an ordinance.

TAG also alleged that the Board's findings relating to the proposed use constituting a hazardous condition to pedestrian traffic, including nearby school children, discouraging the development of property in the area, and adversely affecting the health, safety, or welfare of the surrounding area, were not supported by substantial evidence. Moreover, TAG argued that any testimony from the Township or Objectors regarding adverse effects was speculative and, therefore, could not constitute substantial evidence.

**Trial Court's Pa.R.A.P. 1925 Opinion**

In a subsequent Pa.R.A.P. 1925 opinion issued on December 15, 2017, the trial court stated that the Township has adopted express standards and criteria for the grant of a special exception in section 602.4 of its Ordinance. Specifically, the trial court indicated that an applicant must show that the construction will not be hazardous, inconvenient, or conflict with the normal traffic of pedestrians, particularly children, or vehicles; will not hinder or discourage the appropriate development and use of adjacent land and buildings; and will not increase the burden on any public utilities and facilities. In this regard, the trial court noted that the proposed site was adjacent to Hatfield public school and may impede pedestrian traffic from the children that attend the school, and that the Board heard testimony regarding the proposed use hindering or discouraging development of adjacent land. Further, the trial court held that the testimony of Objectors, particularly Scott, a land

13

developer, provided more than bald assertions, personal opinions, and speculation on the adverse impact of the proposed tower.

## Discussion

On appeal,[3] TAG reiterates the arguments raised in its concise statement of errors on appeal, *i.e.*, that the Board erred by misapplying the burdens of presentation and proof applicable to special exception applications and that the Board's findings were not supported by substantial evidence.

## Section 602.4 of the Ordinance

Section 602.4 of the Township's Ordinance, entitled "Special Exceptions," provides that,

> The Board shall have the power to hear and decide applications for special exceptions listed under SECTION 400 of this ordinance.[4]  In considering such application,

---

[3] Where, as here, no additional evidence is taken following the determination of a zoning hearing board, this Court's review is limited to determining whether the zoning hearing board committed an error of law or a manifest abuse of discretion. *H.E. Rohrer, Inc. v. Zoning Hearing Board of Jackson Township*, 808 A.2d 1014, 1016 n.1 (Pa. Cmwlth. 2002).  An abuse of discretion occurs when findings are not supported by substantial evidence. *Coal Gas Recovery, L.P. v. Franklin Township Zoning Hearing Board*, 944 A.2d 832, 838 n.9 (Pa. Cmwlth. 2008).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*  The zoning hearing board, as fact-finder, determines the credibility of witnesses and the weight afforded to their testimony. *Hawk v. City of Pittsburgh Zoning Board of Adjustment*, 38 A.3d 1061, 1065 (Pa. Cmwlth. 2012).

[4] Section 400 sets forth the permitted and special exception uses in each of the Township's zoning districts.  With respect to the R-1 Zone, the special exception uses include, *inter alia*, public service facilities.  Section 201 of the Ordinance defines a "Public Service Facility" as "[t]he erection, construction, alteration, operation or maintenance of buildings, power plants or substations, water treatment plants or pumping stations, sewage disposal or pumping plants and other similar public service structures by a utility, whether publicly or privately owned, or by a municipal or other governmental agency, including the furnishing of electrical, gas, **communication**, water supply and sewage disposal services."  (Emphasis added).

14

the Board shall give due regard to the nature and condition of all adjacent uses and structures; [sic] and may impose such requirements and conditions as the Board may deem necessary for the protection of adjacent properties and the public interest, including specific limitations as to future expansion.

(a) The Board shall allow a special exception in any "R" Residential, "A" Agricultural-Rural or "C" Conservation District provided that the proposed use meets all of the following standards:

1. The location and size of the use, the nature and intensity of the operations involved in or conducted in connection with it, its site layout, and its relation to streets giving access to it shall be such that both pedestrian and vehicular traffic to and from the use and the assembly of persons in connection with it will not be hazardous, inconvenient or conflict with the normal traffic on residential streets, both at the time and as the same may be expected to increase with any prospective increase in the population of the area, taking into account convenient routes of pedestrian traffic[,] particularly of children, relation to main traffic thoroughfares and to street intersections, and the general character and intensity of development of the area.

2. The location and height of buildings, the location, nature and height of walls and fences, and the nature and extent of landscaping on the site shall be such that the use will not hinder or discourage the appropriate development and use of adjacent land and buildings.

3. The use shall not involve any activity substantially increasing the burden on any public utilities and facilities unless

15

provision is made for any necessary adjustment.

Section 602.4(a)(1)-(3) of the Ordinance.

**Burdens of Proof**

TAG first argues that the Board erred by misapplying the burdens of presentation and proof applicable to special exception applications. More specifically, TAG argues that section 602.4 of the Ordinance merely sets forth general criteria applicable to special exceptions and, because section 602.4 does not expressly place the burden of persuasion regarding general detrimental effects to the public health, safety, and welfare on an applicant, it only needed to prove compliance with the specific objective criteria of the Ordinance, and the burden was on the Township and Objectors to establish any detrimental effects. We agree.

Generally speaking, "A special exception is not an exception to a zoning ordinance, but rather a use which is expressly permitted, absent a showing of a detrimental effect on the community." *Manor Healthcare Corp. v. Lower Moreland Township Zoning Hearing Board*, 590 A.2d 65, 70 (Pa. Cmwlth. 1991). In other words, as stated in our seminal decision in *Bray v. Zoning Board of Adjustment*, 410 A.2d 909, 911 (Pa. Cmwlth. 1980), "The important characteristic of a special exception is that it is a conditionally permitted use, legislatively allowed if the standards are met." This Court recently explained that an applicant for a special exception has both the duty of presenting evidence and the burden of persuading the zoning hearing board that the proposed use satisfies the objective requirements of the zoning ordinance for the grant of special exception. *Berner v. Montour Township Zoning Hearing Board*, 176 A.3d 1058, 1069 (Pa. Cmwlth. 2018) (citing *Manor Healthcare Corp.*).

16

Once an applicant for a special exception shows compliance with the specific requirements of the ordinance, it is presumed that the use is consistent with the promotion of the public health, safety, and welfare, and the burden then shifts to objectors to prove "to a high degree of probability that the impact from the proposed use will substantially affect the health, safety and welfare of the community to a greater extent than would be expected normally from that type of use." *Blancett-Maddock v. City of Pittsburgh Zoning Board of Adjustment*, 6 A.3d 595, 600 (Pa. Cmwlth. 2010). Further, we have repeatedly held that an objector cannot meet his burden with speculation. *Id.*; *Manor Healthcare Corp.*

This Court has described "specific subjective criteria" of an ordinance as "reasonable definite conditions that are detailed in the ordinance." *JoJo Oil Co. v. Dingman Township Zoning Hearing Board*, 77 A.3d 679, 687-88 (Pa. Cmwlth. 2013) (citing *Bray*). We noted in *JoJo Oil Co.* that "these definite criteria are in contrast to the general, non-specific or non-objective requirements such as health and safety." *Id.* at 688. In *Williams Holding Group, LLC v. Board of Supervisors of West Hanover Township*, 101 A.3d 1202, 1213 (Pa. Cmwlth. 2014), albeit a case involving a conditional use rather than a special exception, we cited as an example of a specific criterion a buffer requirement in an ordinance mandating that stormwater basins be located at least 50 feet from the defined edge of a watercourse.

In the present case, we agree with TAG that the requirements of section 602.4 of the Township's Ordinance were general criteria applicable to special exception applications. This section of the Ordinance does not impose any specific objective requirements on an applicant, such as the one relating to distance that we noted in *Williams Holding Group, LLC*. Rather, it imposes non-specific and non-objective requirements such as the proposed use not being hazardous, inconvenient,

17

or conflicting with vehicular and pedestrian traffic, not hindering or discouraging the appropriate development and use of adjacent land and buildings, and not substantially increasing the burden on any public utilities and facilities. This Court has found similar requirements to constitute general criteria. *See B.A.C., Inc. v. Zoning Hearing Board*, 492 A.2d 477, 482 (Pa. Cmwlth. 1985) (describing as general criteria ordinance requirements that the proposed use not fundamentally alter the character of the neighborhood, not be detrimental to the purpose of an adjacent zoning district, not be inconsistent with the uses permitted as of right, and not place a significant additional burden upon public or sanitary facilities); *Warren County Probation Assoc. v. Warren County Zoning Hearing Board*, 414 A.2d 398, 399 (Pa. Cmwlth. 1980) (placing burden on objectors to establish that the proposed use was not appropriate for the particular lot and location and was unreasonably detrimental to neighboring properties).

The only specific criterion that would arguably apply to TAG herein can be found at sections 404.3(a) (relating to setbacks) and 407.1 (relating to special yard regulations) of the Ordinance.[5] Section 404.3 requires that all commercial uses within a residential zoning district be set back a distance of at least 80 feet from all property lines, provided, however, that the distance may be reduced to 40 feet if screening or landscaping is provided. TAG presented testimony from Smith that the proposed tower would be screened by six-foot-high wood slat fence and that the closest property line would be 40 feet, thereby complying with this provision. Section 407.1 requires that no main building or accessory structure shall be located within 30 feet of the existing right-of-way or within 120 feet of the centerline of the same. TAG presented testimony from Smith that the proposed tower would be

---

[5] While the Ordinance imposes height limitations in an R-1 Zone, section 406 specifically exempts communication, television, and radio towers from any such limitations.

18

located 339 feet from Foreman Avenue, the closest public right-of-way, thereby complying with this provision as well. Because TAG complied with the only arguable specific provisions of the Ordinance, the burden shifted to the Township and/or Objectors to establish that the proposed use would be detrimental to the public health, safety, or welfare.

Furthermore, we agree with TAG that the language of section 602.4 does not expressly place the burden of persuasion regarding general detrimental effects to the public health, safety, and welfare on an applicant. Recently, we held that where, as here, "the terms of an ordinance have not expressly placed the burden of persuasion regarding general detrimental effects to the health, safety and welfare on an applicant, the applicant has the burden of persuasion only as to specific requirements, while objectors have the burden as to all general detrimental effects." *Allegheny Tower Associates, LLC v. City of Scranton Zoning Hearing Board*, 152 A.3d 1118, 1124 (Pa. Cmwlth. 2017). Thus, to the extent that the Board placed the burden on TAG to meet the requirements of section 602.4 of the Ordinance, we must conclude that the Board erred.[6]

However, our inquiry does not end here. While the Board improperly placed the burden on TAG, instead of Objectors and/or the Township, the Board did cite to testimony by, or on behalf of such parties, which it deemed sufficient to justify the denial of TAG's application for a special exception. TAG, however, argues that the Board's findings relating to its purported failure to satisfy the requirements of

---

[6] In the course of this argument, TAG also alleges that Board erred to the extent that it seemingly based its decision on a lack of evidence regarding poor wireless coverage in the area. Once again, we agree with TAG. As TAG notes in its brief, there are no specific requirements relating to cell phone towers in the Township's Ordinance, let alone any mandate that an applicant for such a special exception use establish poor service as a prerequisite for obtaining the same. Hence, to the extent that the Board relied on this factor in denying TAG's application for a special exception, the Board erred.

19

the Ordinance were not supported by substantial evidence. We will address this argument below.

**Substantial Evidence**

TAG contends that, contrary to the Board, it did present evidence with respect to each of the criteria of section 602.4 of the Ordinance and any contrary testimony presented by the Township and/or Objectors did not constitute substantial evidence justifying the denial of TAG's special exception application. We agree.

Regarding the impact on vehicular and pedestrian traffic, TAG presented the testimony of Smith, its civil engineer. Smith specifically testified that he did not anticipate any traffic concerns resulting from the site, noting that after the initial construction time of four to six weeks, service technicians would visit the site once a month via a gravel access road on the church property. He also stated that the proposed tower site was located in a wooded area approximately 339 feet from Foreman Avenue, the closest public right-of-way. Neither the Township nor Objectors presented testimony with respect to any potential negative impact on vehicular or pedestrian traffic that would result from the construction of the tower, other than the fact that the church property was located near a public school.

Regarding the proposed tower hindering or discouraging development of adjacent land, Smith testified that the area around the proposed site was heavily wooded. He noted that the plans call for the site to be surrounded by a six-foot-high wood slat fence for security purposes, which would also assist in concealing the equipment at the site. Further, Smith testified that the closest property line would be 40 feet away, consistent with the setback required by section 404.3 of the

20

Ordinance when screening or landscaping is proposed, with the remaining property lines 800 feet and 1,200 feet away.

While the Board relied on the testimony of neighboring landowners DiBease and Scott to conclude that the proposed site did not satisfy this criterion of the Ordinance, we agree with TAG that said testimony does not rise to the "high degree of probability" standard imposed on objectors to a special exception use. *Blancett-Maddock*. In his testimony, DiBease referenced a belief that the proposed tower would cause a decrease in the value of his property and raised questions of aesthetics. Scott, in his testimony, stated that it would be doubtful that he would proceed with a deal to purchase and develop adjacent property for residential use in light of the visibility of the tower and a resulting diminution in the value of such developed property.

However, this Court has previously rejected such reasons as a basis for denying a special exception application. *See Allegheny Tower Associates, LLC*, 152 A.3d at 1126 (holding that a potential decline in property values and general aesthetic concerns, without more, did not constitute sufficient bases for the zoning hearing board's denial of a special exception application); *Sunnyside Up Corp. v. City of Lancaster Zoning Hearing Board*, 739 A.2d 644, 651 (Pa. Cmwlth. 1999), *appeal denied*, 758 A.2d 666 (Pa. 2000) (holding that testimony regarding a potential decrease in value if a proposed use is approved "was mere speculation of a reaction which fell short of the 'high degree of probability' of a substantial affect on the community required"); *Heck v. Zoning Hearing Board*, 397 A.2d 15, 19 (Pa. Cmwlth. 1979) (holding that "aesthetics alone cannot support a determination that the general welfare of a community would be adversely affected by the granting of a special exception").

21

Moreover, with respect to Scott's testimony that he would not proceed with a deal to purchase and develop adjacent property for residential use, TAG appropriately notes in its brief that Scott's deal to purchase the adjacent property was merely oral, not written, and was premised on both aesthetics (the visibility of the proposed tower) and the potential decrease in property values resulting from the proposed tower, which, as described above, are not sufficient bases to justify the denial of a special exception application. Further, Scott merely testified that it was doubtful that he would proceed with the aforementioned deal, R.R. at 167a, which testimony was speculative and did not meet the "high degree of probability" standard discussed above.

Thus, the Board's decision, to the extent that it found that TAG failed to present any witnesses with regard to the requirements of section 602.4 of the Ordinance and that TAG's proposed tower use would substantially affect the public health, safety or welfare, is not supported by substantial evidence.

**Conclusion**

The Board erred by misapplying the burdens of presentation and proof applicable to special exception applications. TAG presented sufficient evidence establishing that it complied with the specific requirements of the Ordinance, thereby shifting the burden to the Township and/or Objectors to establish that the proposed use would be detrimental to the public health, safety, or welfare. Additionally, the requirements of section 602.4 of the Ordinance were general requirements and, as such, there was no burden on TAG relating to these requirements. Nevertheless, contrary to the Board's finding, TAG did present evidence relating to the same. The Board erred insofar as it failed to consider this evidence. Further, the Board erred

22

to the extent that it concluded that the testimony presented by the Township and/or Objectors sufficiently established "to a high degree of probability that the impact from the proposed use will substantially affect the health, safety and welfare of the community to a greater extent than would be expected normally from that type of use." *Blancett-Maddock*. The matter must be remanded to the Board to reconsider the evidence presented by the parties in relation to section 602.4 of the Ordinance and any detrimental impact on the public.

       Accordingly, the order of the trial court is vacated and the matter is remanded to the trial court, with specific instruction to remand to the Board, for a new decision consistent with this opinion.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tower Access Group, LLC,                  :
                        Appellant        :
                                :   No.  1478 C.D. 2017
           v.                               :
                                :
The South Union Township                  :
Zoning Hearing Board                       :

## *ORDER*

AND NOW, this 30th day of July, 2018, the order of the Court of Common Pleas of Fayette County (trial court), dated September 22, 2017, is hereby vacated, and the matter is remanded to the trial court, with specific instruction to remand to the South Union Township Zoning Hearing Board, for a new decision consistent with this opinion.

      Jurisdiction relinquished.

                                            _____

                                          PATRICIA A. McCULLOUGH, Judge