IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shawn T. Yingling and      :
Patricia Yingling,          :
                                 :
            Appellants  :
                                 :
           v.         :  No. 817 C.D. 2018
                            :  Argued:  April 11, 2019
Hanover Borough Zoning Hearing  :
Board and UPMC Pinnacle Hanover  :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE MICHAEL H. WOJCIK, Judge (P)
              HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                     FILED:  October 15, 2019


         Shawn T. Yingling and Patricia Yingling (Appellants) appeal from the May 17, 2018 order of the Court of Common Pleas of York County (trial court), which denied their appeal from the Hanover Borough (Borough) Zoning Hearing Board (Board)'s decision granting the application for a special exception filed by UPMC Pinnacle Hanover Hospital (Hospital).  Upon review, we affirm.


Facts/procedural history

        The Hospital owns property at 220 Potomac Avenue, Hanover, Pennsylvania (Property).  The Property is situated within the Borough's R-6 zoning district, in which one-family detached dwellings are expressly permitted, and other uses, including two-family dwellings, churches, schools, municipal buildings, and hospitals, are permitted by special exception.  Borough of Hanover

Ordinance (Ordinance) Section 140-45, Reproduced Record (R.R.) at 139a. The Property also is located within what is commonly known as the "hospital zone."[1] Ordinance Section 140-28C, R.R. at 103a, 133a-34a.

At the relevant time, the Property was encumbered by a vacant building, which formerly was used as a physician's office.[2] In October 2016, the Hospital filed a Special Exception/Variance Application with the Board, requesting

---

[1] In relevant part, Section 140-28C of the Ordinance states:

> C. Because of the close proximity to the [Hospital] within the following defined area, any of the following uses shall be allowed in this area:
>
> Beginning at the intersection of Stock Street and George Street, hence westwardly along Stock Street to its intersection with McCosh Street; thence northwardly along McCosh Street to its intersection with Allegheny Avenue; thence eastwardly along Allegheny Avenue to its intersection with George Street; thence southwardly along George Street to its intersection with Stock Street, said point being the place of beginning.
>
> (1) Any use normally allowed within the normal zoning district as may heretofore or hereafter be established by the Hanover Borough Council under Article II, Section 140-6 of the [Ordinance, setting forth classes of districts] . . . .
>
> (2) Professional offices, where such professions are normally incident to or related to those services performed within a hospital.
>
> (3) Combination professional offices as allowed in Section 140-28C (2) above, and residential apartment units.

R.R. at 133a-34a.

[2] Although not a matter of record, the Hospital states that the vacant structure on the property was demolished in July 2018, pursuant to a permit issued by the Borough of Hanover on July 9, 2018. Hospital's brief at 2 n.1.

2

an interpretation of Ordinance Section 140-105 and permission to demolish the existing structure and convert the Property into a parking lot.  R.R. at 12a-13a.

Article XVI of the Ordinance governs Parking Lots and Community Garages.  Section 140-105, the only provision therein, states in part as follows:

> Submission of Plans.
>
> A. Plans may be submitted to the [Board] by the owner or lease holder [sic] of land for a public parking lot, a community garage, or for additional private parking and loading space for his vehicles, his employees, and/or customers.  The [Board] shall examine and study the plans, taking into consideration the following uses and provisions for the parking lot or community garage . . . .[3]

---

[3] Section 140-105A sets forth the following eight criteria for approval of applications:

(1) There shall be no sales, dead storage, repair work, dismantling, or service of any kind on said parking lot.

(2) Entrances and exits shall be approved as to location by the Borough Planning Commission.

(3) No parking shall be permitted nearer than one (1′) foot from the side lot line.

(4) To maintain the required open area for front yards in the district and to provide privacy for the properties along boundary lines, a wall, screen planting, or fence not to exceed five (5′) feet in height may be required.

(5) The lot shall be surfaced with a dustproof or hard surface meeting the standard specifications of the borough.

(6) No advertising signs shall be erected upon such lot, except not more than one (1) sign on each street side to indicate the operator and purpose of the lot.  Such signs shall not exceed twenty (20) square feet in area.

**(Footnote continued on next page…)**

B. If the [Board] approves the proposed plans for a parking lot or community garage and Borough Council approves all curb cuts, building permits shall be issued.

R.R. at 176a-77a.

On October 17, 2016, the Board held a hearing on the Hospital's application. The Board recognized that the request was submitted under Ordinance Section 140-105, R.R. at 32a, and the Board referenced the criteria in Ordinance Section 140-105 throughout the hearing.

Jill Rohrbaugh testified that she was the project manager for the Hospital's parking lot proposal. Referencing the plan drawings, Ms. Rohrbaugh noted that the proposed entrance to the parking lot would be on Potomac Street. She stated that the existing driveway on the Property is right on the property line and that the Hospital's proposal would increase the side setback to 28 feet.

Ms. Rohrbaugh testified that a parking study performed for the Hospital demonstrated a need for more employee parking. She explained that increasing off-street parking for Hospital employees would allow the Borough to restrict on-street parking and increase safety in the general area. She stated that use of the proposed parking lot would be restricted to Hospital employees. Ms. Rohrbaugh explained that the percentage of impervious area will be reduced, and

---

**(continued…)**

(7) Lighting facilities, if required, shall be so arranged as to be reflected away from residentially zoned or used property.

(8) If at any time after the issue of the required permits any of the provisions of this section are not complied with, the permits shall be revoked.

R.R. at 176a-77a.

4

the infiltration system and the slope of the parking lot will reduce the amount of storm water runoff. She added that a five-foot fence would be installed, and existing landscaping would remain in place.

Appellant Shawn Yingling testified that he owns the adjacent property at 216 Potomac Avenue. Mr. Yingling stated that he strongly opposed the Hospital's application. He acknowledged that the Borough's Planning Commission had approved the Hospital's proposal. However, he opined that there is plenty of parking available at the church next door.

Mr. Yingling was particularly concerned that the proposal would lower the market value of his property and hurt the salability of his property. R.R. at 53a. In this regard, he insisted that the proposal would increase traffic flow on Potomac Avenue.

Additionally, Mr. Yingling testified that area residents already are bothered by delivery trucks, noises from fans on top of the hospital, sounds from car alarm remotes, and people loitering and smoking outside. He opined that no physical barrier, such as a fence, or wall, would be a good fit in the area. Mr. Yingling also questioned the accuracy of reports indicating that storm water runoff would be reduced. Finally, he expressed concern that the Hospital would purchase additional neighborhood properties. R.R. at 50a-61a.

In response, Ms. Rohrbaugh said that the Hospital has a no-smoking policy that would be enforced in the parking lot. She noted that the doctor's office had occupied two floors and its practice had approximately 2,000 patients. She added that the proposed fence was intended to replace an existing fence and she said that landscaping could be substituted in its place. R.R. at 61a-63a.

5

Neighboring landowner Deb Anker testified that she objected to the proposal because she did not want to see traffic increase on her street. She also expressed concern that the value of her property would be reduced. She added that if the proposed parking lot use were approved, she would hope the Hospital would limit its use to one shift during the daytime. R.R. at 66a-68a.

Lloyd Elkins, who resides at 217 Potomac Avenue, expressed concern about employees coming and going in the evening and making noise outside his home. He also was concerned about snow removal because a contractor once shoveled snow into his chain link fence. He worried that snow removal at the parking lot would clog his sump pump and his basement would flood. R.R. at 68a-72a.

Michael Hockenberry, Chief Operating Officer for the Hospital, testified that during his ten years at the Hospital he has never received a complaint about water in neighboring basements. He said that the Hospital's no-smoking policy would be enforced at the parking lot, the parking lot would not be illuminated, and the Hospital would discourage employees from parking there during overnight hours. R.R. at 72a-75a.

Finally, Dr. Thomas Howard testified that he had been affiliated with the Hospital for 40 years as a staff member and board member. He stated that the Hospital is growing, as is the community, and that the community needs to support the Hospital and its proposed parking lot. R.R. at 75a-76a.

The Board was advised by counsel to consider whether the Hospital's application satisfied the eight criteria for a parking lot under Ordinance Section 140-105. At the conclusion of the hearing, the Board voted to approve the application. As reflected in its written decision dated November 30, 2016, the

6

Board relied on the testimony of Ms. Rohrbaugh and Mr. Hockenberry to find that the Hospital's proposal satisfied the requirements of Ordinance Section 140-105. R.R. at 99a-101a.

Appellants appealed to the trial court. Appellants also filed a motion for stay under Section 1003-A(d) of the Municipalities Planning Code,[4] which the trial court granted on December 16, 2016, ordering all demolition and construction on the Property stayed.

By opinion and order dated September 14, 2017, the trial court denied Appellants' land use appeal in part. R.R. at 220a-35a. The trial court first rejected Appellants' contention that Ordinance Section 140-105 should be invalidated because it requires the Board to issue an advisory opinion. The trial court noted that Section 140-105 provides for parking lots and community garages as a use in all zoning districts within the Borough. The trial court reasoned that parking lots and garages are not permitted uses because they are subject to certain general and specific criteria; consequently, the trial court concluded that parking lots are uses permitted by special exception. Citing *Brunner v. Zoning Hearing Board of Upper Makefield Township*, 315 A.2d 359, 361 (Pa. Cmwlth. 1974),[5] the trial court explained that it would treat the matter as a special exception even though Section 140-105 of the Ordinance does not use that term. Finally, the trial

---

[4] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §11003-A(d).

[5] In *Brunner*, this Court interpreted an ordinance provision regulating the use of property as an airfield. We concluded that although the ordinance did not specifically define such use as a special exception, exact terminology was not determinative because the language of the ordinance provision "evidence[d] an intention by its draftsmen that it be treated as a special exception." 315 A.2d at 361.

court concluded that the Board did not err in determining that the Hospital's proposal satisfied the eight criteria for approval of a parking lot set forth in Section 140-105 of the Ordinance.

However, the trial court concluded that the Board failed to consider whether the Hospital's proposal also complied with the general criteria applicable to the grant of all special exceptions, set forth in Section 140-135B, and failed to address the requirements of Ordinance Section 140-28D(9) that "[a]lterations to existing structures . . . shall not change the character or appearance of the neighborhood." R.R. at 134a. Accordingly, the trial court denied Appellants' land use appeal in part, vacated the Board's decision granting the special exception, and remanded the matter to the Board to take further testimony, as necessary, to render such determinations.

The Board held a remand hearing on October 16, 2017. Harry Roth, AICP,[6] testified that the proposed parking lot satisfied the criteria for a special exception under Ordinance Section 140-135B[7] as well as the restrictions of

---

[6] The parties stipulated that Mr. Roth is an expert in community planning and zoning. R.R. at 310a.

[7] Ordinance Section 140-135B (Special Exceptions) states:

> Where the provisions of this ordinance provide that the [Board] is to hear and/or decide Special Exceptions to the terms of this ordinance, they shall determine that:
>
> 1. The proposed change will not substantially injure or detract from the use of the neighboring property or from the character of the neighborhood, and that the use of the property adjacent to the area included in the proposed change or plan is adequately safeguarded.

**(Footnote continued on next page…)**

Ordinance Section 140-28D(9).  R.R. at 311a.  Mr. Roth first noted that the Borough identified the hospital zone as a neighborhood.  He explained that a neighborhood is a geographic area that shares location, infrastructure, access, and a "shared expectation about the future."  R.R. at 312a.  He stated that the Borough's identification of this area as within the hospital zone acknowledges the direct and powerful impact that the Hospital has on the character of the neighborhood, citing the large Hospital campus with improved parking lots and garages and the contemplation of expansion in the future.  Mr. Roth also testified that the R-6 zone,

---

**(continued…)**

> 2. The use and operation in connection with the proposed change would be in harmony with the orderly and appropriate development of the zone, giving consideration to:
>
>   (a) Location of the use, including location with respect to the existing or future streets giving access to it.
>
>   (b) Nature and intensity of the operations involved.
>
>   (c) That adequate water, sewer, storm draining, fire and police protection are or can be provided for this use.
>
>   (d) That the use will not create traffic congestion or cause commercial or industrial traffic that would jeopardize public safety.
>
> 3. The proposed change will serve the best interests of the Borough, the convenience of the community (where applicable), and the public welfare.
>
> The [Board] may attach such reasonable conditions and safeguards considered necessary to implement the purposes and objectives of this act, to protect the public welfare and the Comprehensive Plan.

R.R. at 192a-93a.

9

the underlying zoning district, provides for a wide range of public and quasi-public uses, such as municipal buildings, churches, schools and parks, with each use having surface lots for off-street parking. R.R. at 313a.

Mr. Roth believed that Section 140-28D(9) (prohibiting change to the character or appearance of the neighborhood) related to professional offices or a combination of offices and residences and was not applicable to the Hospital's proposal for a parking lot only. Nevertheless, he opined that the use of the Property as a surface parking lot would not change the character or general appearance of the neighborhood because there are parking lots throughout the neighborhood, including an enormous parking lot right across the street. R.R. at 315a-16a.

Mr. Roth next addressed the specific criteria for a special exception under Ordinance Section 140-135B. He stated that the parking lot would not injure or detract from the use of the neighboring community or from the character of the neighborhood, adding that the 28-foot setback and fencing are enhancements. He noted that the proposal would eliminate one of two existing access drives, thereby increasing safety and mobility for vehicular and pedestrian traffic. R.R. at 317a-18a.

Mr. Roth opined that the proposed use as a parking lot would be less intensive than other uses allowed in the district. He explained that the parking lot would serve people who are already coming to the neighborhood. He stated that the parking lot would not be a destination that would create a demand for parking; rather, the parking lot would provide a service in the nature of off-street parking. Mr. Roth also stated that the proposal meets the Ordinance criteria related to adequate water, sewer, storm draining, and fire and police protection.

10

Finally, Mr. Roth testified that the Hospital's proposal would serve the best interests of the Borough, the community, and the public welfare by eliminating reliance on on-street parking, increasing the parking available during inclement weather, and meeting the needs of the Hospital as it grows. Mr. Roth clarified that the Ordinance criteria at issue relates to the neighborhood, not just Potomac Avenue. R.R. at 319a-26a.

Mr. Yingling also testified at the remand hearing. He stated that for 17 years the Property next door was used as a medical office, during daytime hours only, and with minimal patient traffic. Mr. Yingling submitted photographs to demonstrate the residential nature of the immediate area on Potomac Avenue. He asserted that the parking lot would, in fact, generate a great deal of traffic on his street.

Mr. Yingling objected to the use of lighting, but he acknowledged that the Hospital did not propose to install lighting in the parking lot. However, he complained that the absence of lighting would increase the risk of injuries and that the Hospital would likely want to add lighting in the future. He opined that such lighting would affect his family's enjoyment of their adjacent property.

Appellants offered Jason Forry, a real estate agent, as an expert in property valuation. Mr. Forry testified that he prepared a certified market analysis, which reflects that the value of Appellants' property would decrease from $230,000.00 to $200,000.00 if the proposed parking lot were constructed.

Appellants urged the Board to adopt a case-by-case approach rather than rely on a zoning map to define the "neighborhood." Appellants argued that their "neighborhood" was the area immediately surrounding their home.

On November 20, 2017, the Board voted to grant the Hospital's application for a special exception subject to six conditions. The relevant conditions restrict the use of the parking lot to employees only, limit the hours of operation to between 6:30 a.m. and 8:00 p.m., and prohibit the installation of lighting. The Board issued its written decision on December 28, 2017.

On January 11, 2018, the Hospital appealed to the trial court, challenging the imposition of those three conditions. On January 25, 2018, Appellants also filed an appeal with the trial court. The trial court denied the Hospital's appeal. By decision and order dated May 17, 2018, the trial court also denied Appellants' appeal, rejecting Appellants' contention that the Board abused its discretion in determining that the Hospital's proposed parking lot will not change the character or general appearance of the neighborhood, as required by Ordinance Section 140-28D(9).

Discussion[8]

Relying on *Grand Central Sanitary Landfill v. Zoning Hearing Board of Plainfield Township*, 625 A.2d 115 (Pa. Cmwlth. 1993), Appellants first assert that the trial court erred and abused its discretion by failing to vacate the Board's decision where the Hospital's appeal, which challenged the Board's imposition of conditions that it previously had agreed to, reflects that the Hospital misrepresented its intentions regarding the use of the property during the

---

[8] Because the trial court affirmed the Board's decision without taking additional evidence, our scope of review is limited to determining whether the Board abused its discretion, committed an error of law, or made findings of fact not supported by substantial evidence of record. *Accelerated Enterprises v. Hazle Township Zoning Hearing Board*, 773 A.2d 824, 826 (Pa. Cmwlth. 2001).

proceedings before the Board. However, the facts in *Grand Central* are distinguishable. In that case, the testimony relied upon concerned permit filings, land use plans, and maps, which, after an opportunity for research, was subsequently confirmed to be a misrepresentation of the facts. Here, the Board imposed a restriction concerning the hours of operation that differs slightly from the Hospital's proposal, and the mere fact that the Hospital appealed the conditions imposed by the Board does not demonstrate a material misrepresentation to the Board.

Appellants argue that the Board erred in determining that the proposed parking lot would not substantially injure or detract from the use of neighboring property or the character of the neighborhood as prohibited under Ordinance Section 140-135B. Appellants assert that they provided substantial evidence demonstrating that conversion of the former medical office to a parking lot would substantially injure the neighboring property. As support, Appellants cite Mr. Forry's testimony that the value of their home would be negatively affected. Appellants also rely on Mr. Yingling's testimony that traffic and noise on his street would be substantially increased.

Appellants further argue that the Board erred in determining that the demolition of the building and proposed parking lot would not alter the existing structure or change the character or general appearance of the neighborhood as restricted under Ordinance Section 140-28D(9). Appellants contend there is no dispute that a parking lot is different in character and nature from a medical office. They further complain that the Board considered the "neighborhood" as the entire hospital zone in analyzing the impact of the proposed use. Appellants also assert,

without elaboration, that a parking lot is not a permitted principal use within the hospital zone.

As the trial court recognized, Ordinance Section 140-105 provides for parking lots and community garages as uses permitted by special exception in all zoning districts within the Borough. Mr. Roth's testimony, as well as the plain terms of the Ordinance, supports the Board's determination that the term "neighborhood" means the entire hospital zone. Mr. Roth's testimony also addressed all of the specific criteria for a special exception set forth in Ordinance Section 140-135B.

We have previously explained:

[A] special exception is not an exception to a zoning ordinance; rather, it is a use that is expressly permitted by the ordinance unless the board determines, according to standards set forth in the ordinance, that the proposed use would adversely affect the community. Because the use is contemplated by the ordinance, there is a **presumption that the governing body considered the effect of the use when enacting the ordinance and determined that the use is consistent with the health, safety, and welfare of the community so long as it meets the objective requirements of the ordinance**.

*Marr Development Mifflinville, LLC v. Mifflin Township Zoning Hearing Board*, 166 A.3d 479, 484 (Pa. Cmwlth. 2017) (emphasis in original) (citations omitted) (internal quotation marks omitted).

Once the applicant for a special exception demonstrates compliance with the specific ordinance requirements, it is presumed that the proposed use is consistent with the promotion of the public health, safety, and welfare. *Tower Access Group, LLC v. Union Township Zoning Hearing Board*, 192 A.3d 291, 300 (Pa. Cmwlth. 2018). The burden then shifts to the objectors to establish, to a high

14

degree of probability, that the impact from the proposed use will substantially affect the health, safety and welfare of the community to a greater extent than would be expected normally from that type of use. *Id.* We have repeatedly held that an objector cannot meet its burden with speculation. *Id.*

The Hospital presented evidence demonstrating that the proposed parking lot satisfied the specific criteria for a parking lot or garage set forth in Section 140-105, the general criteria for a special exception under Section 140-135B, and the requirements of Ordinance Section 140-28D(9) concerning alterations of structures. The burden then shifted to Appellants to show that the proposed use would have a detrimental effect on the public health, safety, and welfare of the community.

As we have repeatedly noted, the burden placed on the objectors is a heavy one. *Siya Real Estate LLC v. Allentown City Zoning Hearing Board*, 210 A.3d 1152, 1160 (Pa. Cmwlth. 2019). Objectors "cannot meet their burden by merely speculating as to possible harm, but instead must show a high degree of probability that the proposed use will substantially affect the health and safety of the community." *Marr*, 166 A.3d at 484. It is well settled that an anticipated increase in traffic for a proposed use will not, on its own, satisfy an objector's burden of proof. *Appeal of Brickstone Realty Corp.*, 789 A.2d 333, 341-42 (Pa. Cmwlth. 2001); *Bray v. Zoning Board of Adjustment*, 410 A.2d 909, 914 (Pa. Cmwlth. 1980). To warrant the denial of a special exception, objectors must show a high degree of probability that the anticipated traffic increase would pose a substantial threat to the health and safety of the community. 410 A.2d at 914. Additionally, it is well settled that evidence that property values may decrease is

15

insufficient to meet an objector's burden. *Allegheny Tower Associates, LLC v. City of Scranton Zoning Hearing Board*, 152 A.3d 1118, 1126 (Pa. Cmwlth. 2017).

In this case, Appellants offered only speculative testimony concerning the impact of the Hospital's proposed parking lot. They did not present any evidence demonstrating a high degree of probability that the proposed use as a parking lot will significantly increase traffic or otherwise substantially affect the health and safety of the community, or that it will generate adverse effects greater than those that are normally associated with a parking lot use. Thus, the Board did not err or abuse its discretion in granting the special exception.

Accordingly, we affirm.

MICHAEL H. WOJCIK, Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shawn T. Yingling and　　　　　:
Patricia Yingling,　　　　　　　:
　　　　　　　　　　　　　　　:
　　　　　　　　Appellants　　:
　　　　　　　　　　　　　　　:
　　　　　　　v.　　　　　　　: No. 817 CD 2018
　　　　　　　　　　　　　　　:
Hanover Borough Zoning Hearing　:
Board and UPMC Pinnacle Hanover :


O R D E R


AND NOW, this 15th day of October, 2019, the order of the Court of Common Pleas of York County is AFFIRMED.


＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
MICHAEL H. WOJCIK, Judge