| | | |
|---|---|---|
| Raymond Czachowski | : | **CASES CONSOLIDATED** |
| | : | |
| v. | : | No. 1344 C.D. 2020 |
| | : | No. 1359 C.D. 2020 |
| Zoning Board of Adjustment of the | : | Argued: October 21, 2021 |
| City of Pittsburgh, City of Pittsburgh | : | |
| and LPGM Limited, LLC | : | |
| | : | |
| Appeal of: LPGM Limited, LLC | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge[1]
                    HONORABLE MICHAEL H. WOJCIK, Judge[2]
                    HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY JUDGE LEAVITT                                                    FILED:  March 2, 2022

LPGM Limited, LLC (Landowner) appeals an order[3] of the Allegheny County Court of Common Pleas (trial court) that reversed the City of Pittsburgh Zoning Board of Adjustment's (Zoning Board) grant of a special exception to allow the development of a food court in an abandoned warehouse and a special exception and variance for development of a nearby parcel as off-site parking for the food court.  Because Landowner satisfied the criteria for special exceptions under the City

---

[1] This matter was assigned to the panel before January 3, 2022, when President Judge Emerita Leavitt became a senior judge on the Court.

[2] This case was argued before a panel of the Court that included Judge Crompton.  Judge Crompton's service with the Court ended on January 2, 2022, before the Court reached a decision in this matter.  Accordingly, Judge Wojcik was substituted for Judge Crompton as a panel member in this matter and considered the matter as submitted on the briefs.

[3] The trial court's decision disposed of two consolidated matters. Landowner filed a notice of appeal for each trial court docket number.  By order of this Court dated April 8, 2021, the appeals were consolidated.

of Pittsburgh's Zoning Code[4] and demonstrated a hardship for a variance, the trial court erred in setting aside the Zoning Board's grant of Landowner's applications. Accordingly, we reverse the trial court.

**Background**

Landowner owns two properties at 4609 and 4751 Butler Street, which are located in the Local Neighborhood Commercial (LNC) District in central Lawrenceville. The property at 4609 Butler Street consists of a vacant warehouse, which was constructed in the 1890s and extends to all four property lines. The second property is located approximately 1000 feet from the warehouse. It was formerly used to sell used cars and is vacant except for a small block building once used for the car business. The second property has an irregular shape and is located at the Butler Street intersection with Plummer Street.

Landowner proposes to rehabilitate the warehouse for use as a food court, with five food vendors and a coffee service. It proposes to provide for parking in several ways. It will have two bicycle parking spots inside the warehouse for employees and four more bicycle parking spaces on the sidewalk in front of the building for patrons. Landowner proposes to demolish the small, one-story block building on the second property and use that lot for seven motor vehicle parking spaces and nine bicycle parking spaces. Landowner intends to eliminate the second property's two curb cuts on Butler Street and move the Plummer Street curb cut 60 feet away from the intersection with Butler Street.

---

[4] ZONING CODE OF THE CITY OF PITTSBURGH, PENNSYLVANIA, §§901.01-926 (ZONING CODE).

The City's Planning Department determined that Landowner's proposed food court needs 14 vehicle parking spaces.[5] Landowner proposed to satisfy that requirement with seven parking spaces on its second property and with an Alternative Parking Plan. The proposed Alternative Parking Plan included the following components:

- A centrally-managed delivery and service schedule for outside service providers to reduce vehicle traffic;

- All vendors will make the Port Authority Job Perks Program[6] available to employees;

- Landowner will make the Port Authority program available to all employees and will reimburse 50% of the employees' program costs;

- Landowner will become a member of Bike Pittsburgh;

- Vendors will pay monthly bonuses to employees who walk or bike to work;

- Employees will be hired through Goodwill of Southwestern Pennsylvania and Lawrenceville Works; and

- Promotions and incentives will be offered to customers that bike or use rideshare programs to travel to the food court.

R.R. 11-16.

---

[5] The requirement of 20 parking spaces was reduced by 30% by providing, instead, 6 bicycle parking spaces. Zoning Board Decision at 2, Finding of Fact No. 9; Reproduced Record at 94 (R.R. __).

[6] This program allows employers to offer public transit fare to employees at a pre-tax rate through payroll deduction. *See* https://www.portauthority.org/fares-and-passes/pass-programs/job-perks/#:~:text=What%20is%20the%20Job%20Perks%20Program%3F%20Port%20Authority%E2%80%99s,exempt%20from%20paying%20certain%20taxes%20on%20this%20deduction. (last visited March 1, 2022).

On October 25, 2019, Landowner applied to the Zoning Board for a special exception to operate a food court and a special exception for its parking proposal consisting of off-site parking together with the Alternative Parking Plan. Additionally, Landowner sought a variance from the required setback of 10 feet from a City right-of-way for the second property to be used for off-site parking.

**Zoning Board**

On November 21, 2019, the Zoning Board conducted a hearing on Landowner's application for a special exception for the food court/restaurant use (Case No. 245) and a special exception and variance for the parking lot (Case No. 246). At the hearing, Brett Minarik, principal, testified on behalf of Landowner, explaining the details of the proposed food court and Alternative Parking Plan. He also testified about his discussions with community groups. Katie LaForest, the architect for the project, testified about the design of the warehouse renovations and the parking lot, which would be screened by landscaping.

In opposition to Landowner's application, Ray Czachowski (Objector) testified that he lives in Lawrenceville and owns several properties there. He testified that parking is difficult in the area; at times he has had to park three blocks from his home because of the lack of on-street parking. He opposed the approval of a new restaurant for the stated reason that restaurant patrons throw trash in the street.

On behalf of Objector, Michael Mundry, a traffic engineer, testified that valet parking was the appropriate way to provide parking for Landowner's proposed restaurant use. *See* ZONING CODE §914.07.G.1(b).[7] With regard to the proposed

---

[7] It states:

> (b) Valet Parking
>
> The Zoning Administrator shall be authorized, in accordance with the Administrator Exception provisions of [Section] 922.08 [of the Zoning Code], to

4

relocation of the Plummer Street curb cut for the off-site parking lot, Mundry testified that it could interfere with the loading docks on the property across the street.

Owners of the residence adjacent to the proposed parking lot expressed concerns about security and the impact of Landowner's proposal on their property's value. Representatives from Lawrenceville United and Lawrenceville Corporation testified in support of Landowner's proposal, explaining that the proposal complied with their requests to mitigate parking issues associated with the proposed food court. Dave Breingan, Executive Director of Lawrenceville United, testified that "the transportation demand management strategies [Landowner was] deploying, … were requested by [Lawrenceville United]. [Landowner had] essentially agreed to every single one of those." Notes of Testimony (N.T.), 11/21/2019, at 23; R.R. 46. Additionally, Rachel Webber, the business district manager with Lawrenceville Corporation, testified that the Lawrenceville Corporation supported the project.

The Zoning Board granted Landowner's special exception and dimensional variance applications. It explained its decision as follows.

First, the Zoning Code requires the applicant for a special restaurant exception to address parking and access. ZONING CODE §911.04.A.57.[8] The Zoning

_____

permit valet parking as a means of satisfying otherwise applicable off-street parking standards, provided that the following standards are met:

(1) An automobile shall be retrievable from its parking space with the movement of a maximum of two (2) additional vehicles; and

(2) The Zoning Administrator certifies that the valet parking will not cause interference with the public use of streets or ways or imperil the public safety.

ZONING CODE §914.07.G.1(b).

[8] It states, in relevant part:

Board concluded that Landowner's credible evidence established that it will satisfy those requirements with off-site parking and the Alternative Parking Plan. The Zoning Board did not credit Mundry's opinion that valet parking was the only viable parking solution. Further, Objector did not present any evidence that Landowner's proposed restaurant use would generate a parking need greater than would any restaurant. Likewise, Objector did not present substantial evidence of a detrimental impact from the off-site parking proposal.

The Zoning Board then addressed Landowner's proposed Alternative Parking Plan. The Zoning Code required 20 parking spaces for the proposed restaurant use, but this was reduced to 14 by Landowner's provision of bicycle parking inside and on the sidewalk. Landowner proposed to satisfy the remaining parking requirement with parking spaces for seven vehicles and nine bicycles in the second lot together with the Alternative Parking Plan. Noting that the Alternative Parking Plan was supported by the local community groups, the Zoning Board

---

(a) In LNC, [Neighborhood Industrial (NDI)], [Urban Neighborhood Commercial (UNC)], [Riverfront (RIV)] and [Educational/Medical Institutional (EMI)] Districts

Restaurant (General) uses shall be subject to the following standards in the LNC, NDI and UNC Districts:

(1) Parking facilities and access shall be designed and located to clearly meet the demand of the facility in a way which does not interfere with parking spaces required for surrounding residential uses;

(2) Off-site impacts of the use, which are directly attributed to activities occurring on-site, shall be controlled to avoid conflicts with surrounding residential use; and

(3) The proposed use shall be subject to the Site Plan Review procedures of Section 922.04.

ZONING CODE §911.04.A.57(a).

approved the Alternative Parking Plan as appropriate for Landowner's proposed food court use.

Finally, the Zoning Board addressed the special exception and dimensional variance needed for the second lot. It found that eliminating the two Butler Street curb cuts would improve pedestrian movement. Adding trees on the street as well as landscaping and fencing along the interior property line would also improve the lot. The Zoning Board concluded that a dimensional variance from the 10-foot setback was appropriate because of the triangular shape of the property, with frontages on both Butler and Plummer Streets. This unique condition precluded strict compliance with the 10-foot setback from Plummer Street.

Objector appealed to the trial court.

In his land use appeal, Objector identified the following errors by the Zoning Board: (1) Landowner did not provide enough parking spaces; (2) the Alternative Parking Plan did not compensate for 11 parking spaces; (3) the public notice on the Alternative Parking Plan was not given by the Zoning Board; (4) the City's Planning Director did not provide input on the Alternative Parking Plan; (5) the Alternative Parking Plan could not be recorded or enforced; (6) the off-site parking lot would be unsupervised; (7) the off-site parking violated Section 925.04.a.3.e.i of the Zoning Code; (8) there was no hardship; (9) the new curb cuts on the off-site parking lot would conflict with traffic; and (10) the findings on the Alternative Parking Plan were not supported by substantial evidence. Objector's appeal focused on the Alternative Parking Plan, but he also argued that the Zoning Board made procedural errors that rendered its decision invalid.

The trial court reversed the Zoning Board. The trial court described Landowner's Alternative Parking Plan as aspirational, stating that it was impossible

to quantify how many employees would be walking, taking the bus, biking, or using a rideshare program to get to work. It further observed that it was impossible to know how many cars would be removed from the streets based upon Landowner's incentives. For these reasons, the trial court held that substantial evidence did not support the Zoning Board's factual findings on the Alternative Parking Plan and that the Zoning Board erred and abused its discretion in granting any of Landowner's applications for special exceptions and variances.

Landowner filed the instant appeal to this Court.

## Appeal

On appeal,[9] Landowner presents two issues for our consideration. First, Landowner argues that the trial court abused its discretion because substantial evidence supports the Zoning Board's findings that Landowner met the requirements for a special exception for an Alternative Parking Plan. Second, Landowner argues that the trial court abused its discretion in overturning the entire decision of the Zoning Board when it found fault only with the Alternative Parking Plan.

---

[9] Where a trial court receives no additional evidence on appeal from the zoning board's decision, the appellate court determines whether the zoning board committed an abuse of discretion, an error of law, or made findings of fact not supported by substantial evidence. *Pittsburgh Trust for Cultural Resources v. Zoning Board of Adjustment of City of Pittsburgh*, 604 A.2d 298, 301 (Pa. Cmwlth. 1992). An abuse of discretion occurs where the zoning board's findings are not supported by substantial evidence. *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 721 A.2d 43, 46 (Pa. 1998). Substantial evidence is such relevant evidence that a reasonable mind would accept as adequate to support a finding of fact. *Id.* If the question involves "statutory interpretation," which presents a question of law, our standard of review is *de novo*, and our scope of review is plenary. *Siya Real Estate LLC v. Allentown City Zoning Hearing Board*, 210 A.3d 1152, 1156-57 (Pa. Cmwlth. 2019) (citing *Hoffman Mining Company, Inc. v. Zoning Hearing Board of Adams Township, Cambria County*, 32 A.3d 587, 592 (Pa. 2011)). Thus, our scope of review of the trial court's order is plenary, and our standard of review is *de novo*.

8

**Analysis**

We begin with a review of the applicable legal principles. A special exception is a use that is expressly permitted in a zoning district so long as the conditions detailed in the ordinance are met. *Broussard v. Zoning Board of Adjustment of City of Pittsburgh*, 907 A.2d 494, 499 (Pa. 2006) (*Broussard II*). In that regard, the landowner bears the burden of presenting evidence and persuading the zoning hearing board that the proposed use satisfies the objective requirements in the zoning ordinance for a special exception. *Tower Access Group, LLC v. South Union Township Zoning Hearing Board*, 192 A.3d 291, 300 (Pa. Cmwlth. 2018). It is presumed that a "use satisfies local concerns for the general health, safety and welfare and that such use comports with the intent of the zoning ordinance." *Broussard v. Zoning Board of Adjustment of the City of Pittsburgh*, 831 A.2d 764, 772 (Pa. Cmwlth. 2003) (*Broussard I*). The zoning board's function "is to determine that such specific facts, circumstances and conditions exist which comply with the standards of the ordinance and merit the granting of the exception." *Broussard II*, 907 A.2d at 499 (citing *Kotzin v. Plymouth Township Zoning Board of Adjustment*, 149 A.2d 116, 118 (Pa. 1959)).

An alternative parking plan is a special exception under the Zoning Code. An alternative parking plan must include such mechanisms as the payment of subsidies to encourage the use of public transportation, biking, or walking; posting or sharing information about alternative transportation; making special accommodations for carpools; and such other measures to limit vehicular traffic. ZONING CODE §914.07.G.2.

For a variance, the "landowner bears the heavy burden of proving that he suffers from an unnecessary hardship, which hardship is not self-imposed, and

9

that granting the variance will not adversely affect the public health, safety, and welfare." *Doris Terry Revocable Living Trust v. Zoning Board of Adjustment of the City of Pittsburgh*, 873 A.2d 57, 61 (Pa. Cmwlth. 2005). In *Larsen v. Zoning Board of Adjustment of the City of Pittsburgh*, 672 A.2d 286, 289 (Pa. 1996), the Pennsylvania Supreme Court identified four criteria that must be satisfied for the grant of a variance. The criteria are:

> (1) that an unnecessary hardship exists which is not created by the party seeking the variance and which is caused by unique physical circumstances of the property for which the variance is sought;
>
> (2) that a variance is needed to enable the party's reasonable use of the property;
>
> (3) that the variance will not alter the essential character of the district or neighborhood, or substantially or permanently impair the use or development of the adjacent property such that it is detrimental to the public's welfare; and
>
> (4) that the variance will afford the least intrusive solution.

*Id*. (citing Section 910.2 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10910.2).

With this background, we turn to Landowner's issues on appeal.

**Alternative Parking Plan**

In its first issue, Landowner argues that the trial court erred in reversing the Zoning Board's grant of a special exception for the Alternative Parking Plan because the record established that it met the requirements of Section 914.07.G of the Zoning Code. Objector's subjective belief that it is "unrealistic" that patrons and employees of the food court will use alternative transportation did not trump the

criteria expressed in the Zoning Code. Landowner Brief at 19. Landowner also argues that the trial court improperly substituted its judgment for that of the Zoning Board by dismissing Landowner's Alternative Parking Plan as "aspirational." *Id*. at 20.

Objector responds that Landowner had the burden of showing a workable plan, and it did not do so because there was no testimony from a competent expert that the Alternative Parking Plan is likely to reduce vehicle use. Objector contends there is no way to determine whether the incentives in the Alternative Parking Plan will work or be enforced by the city.

The stated purpose of Chapter 914 of the Zoning Code, entitled "Parking Loading and Access," is as follows:

> 1. Allow flexibility in addressing vehicle parking, loading and access issues;
>
> 2. Present a menu of strategies to solve parking issues rather than parking space requirements;
>
> 3. Maintain and enhance a safe and efficient transportation system that is consistent with environmental goals and clean air; and
>
> 4. Ensure that off-street parking, loading, and access demands associated with new development will be met without adversely affecting other nearby land uses and surrounding neighborhoods.

ZONING CODE §914.01.A. These goals are mirrored in the Zoning Code provisions on Off-Site Parking. Section 914.07 authorizes the use of Alternative Access and Parking Plans to satisfy the minimum parking requirements. ZONING CODE §914.07.A.[10]

---

[10] Section 914.07.G.2 states:

11

Parking cannot be provided at the food court lot because the building extends to each property line. Landowner purchased the second lot to provide dedicated off-site parking for food court customers and employees. However, the lot's irregular shape cannot accommodate 14 parking spaces. Therefore, Landowner applied for approval of an Alternative Parking Plan, which is specifically authorized in the Zoning Code "to meet vehicle parking … needs by means other than providing parking spaces on-site[.]" ZONING CODE §914.07.A. Landowner worked with the City Planning Department to address the standards of the Zoning Code for its Alternative Parking Plan. The Plan provides that both Landowner and the food court vendors will take steps to encourage alternative transportation. They will reimburse employees 50% of their costs for commuting by public transportation. Landowner will support Bike Pittsburgh, pay bonuses to employees who walk or bike to work, promote local hiring so employees can walk, and offer promotions to encourage customer use of rideshare services.

The Zoning Board, as finder of fact and the sole judge of witness credibility, credited Landowner's evidence over that presented by Objector. Further, the Zoning Board is entitled to deference in its understanding of the Zoning Code and application of the Zoning Code to Landowner's Alternative Parking Plan.

Section 914.07.G.2 of the Zoning Code required Landowner to "demonstrate to the satisfaction" of the Zoning Board "that the proposed plan will

---

The Zoning Board of Adjustment shall be authorized, in accordance with the Special Exception provisions of [Section] 922.07, to consider and approve any alternative to providing off-street parking spaces on the site of the subject development if the applicant demonstrates to the satisfaction of the Zoning Board of Adjustment that the proposed plan will result in a better situation with respect to surrounding neighborhoods, citywide traffic circulation and urban design than would strict compliance with otherwise applicable off-street parking standards.

ZONING CODE §914.07.G.2.

12

result in a better situation with respect to surrounding neighborhoods, citywide traffic circulation and urban design than would strict compliance with otherwise applicable off-street parking standards." ZONING CODE §914.07.G.2. Landowner's Alternative Parking Plan incorporated public transit and bicycling programs, financial incentives, and discounts for customers who use ridesharing, all of which are contemplated by the Zoning Code. In short, Landowner satisfied the Zoning Code's objective criteria for a special exception. In rejecting the Zoning Board's decision, the trial court faulted Landowner for not quantifying the number of employees that must use the transportation incentives or the number of cars the Alternative Parking Plan would take off the street. Such a requirement is nowhere stated in the Zoning Code. Rather, an alternative parking plan addresses parking in a way that enhances the neighborhood while advancing an efficient transportation system. ZONING CODE §914.01.A. We discern no error in the Zoning Board's conclusion that Landowner's Alternative Parking Plan satisfied the requirements in the Zoning Code.

Objector had a heavy burden to overturn the Zoning Board's grant of a special exception. *Marr Development Mifflinville, LLC v. Mifflin Township Zoning Hearing Board*, 166 A.3d 479, 483 (Pa. Cmwlth. 2017). An objector "must demonstrate more than unsubstantiated concerns or vague generalities, and [m]ere speculation as to possible harm is insufficient." *Dunbar v. Zoning Hearing Board of City of Bethlehem*, 144 A.3d 219, 226 (Pa. Cmwlth. 2016) (internal quotation marks omitted). Before the Zoning Board, Objector complained about on-street parking shortages in the neighborhood and expressed concern over improper disposal of trash generated by the food court. Objector did not challenge the Alternative Parking Plan as not being sufficiently specific about its impact on

13

vehicular traffic.  The inadequacy of existing on-street parking is irrelevant because the proposed restaurant use is expressly permitted.  It was Objector's burden to show that Landowner's proposal would have an impact greater "than would be expected normally from that type of use."  *See Tower Access Group, LLC*, 192 A.3d at 300 (quoting *Blancett-Maddock v. City of Pittsburgh Zoning Board of Adjustment*, 6 A.3d 595, 300 (Pa. Cmwlth. 2010)).[11]  Objector did not make this showing.

We conclude that the trial court erred in imposing requirements on Landowner's Alternative Parking Plan not contained in the Zoning Code.  Further, Objector's evidence did not provide any basis for reversing the Zoning Board's grant of a special exception for the Alternative Parking Plan.

## Abuse of Discretion

Next, Landowner argues that the trial court abused its discretion by reversing the Zoning Board's decision in its entirety when the trial court's decision addressed only the Alternative Parking Plan.  Landowner contends that it met the relevant criteria for the special exceptions and the dimensional variance, and the Zoning Board's findings in that regard were supported by substantial evidence.

---

[11]  In his brief, Objector raises other challenges to the Alternative Parking Plan.  Specifically, Objector argues (1) the delivery schedule violates the residential compatibility limitations relating to garbage and recyclables, ZONING CODE §916.05.A, and loading, ZONING CODE §916.05.B; (2) proper notice of the Alternative Parking Plan was not provided to the community, ZONING CODE §914.07.D2, and notice of the proposed Plan was not printed on the placards posted on the food court and off-site parking parcels; (3) the credit given for bicycle parking was greater than the 10% permitted under Section 914.07.G.2(b)(3) of the Zoning Code; (4) the Alternative Parking Plan cannot be reduced to writing and recorded, as required by Section 914.07.E-F of the Zoning Code, and is incapable of being enforced by the Department of Permits, Licenses and Inspections; and (5) the Zoning Board did not receive a report from the Planning Director on the adequacy of the Alternative Parking Plan provisions.  None of these issues were addressed by the trial court, and Objector did not file a protective cross-appeal of the trial court's orders.  *Sateach v. Beaver Meadows Zoning Hearing Board of Appeals*, 676 A.2d 747, 751 (Pa. Cmwlth. 1996) (issues limited to those raised by appellant).  Accordingly, these issues are waived and will not be addressed by this Court.  *Id*.

14

Objector responds that the Zoning Board erred by approving a dimensional variance for the parking lot because an off-site parking lot must be a shared parking lot, and Landowner's parking will not be shared. Additionally, Objector argues that Landowner's sole reason for the variance was to allow more parking spaces on the parking lot, which is not a hardship.

The Zoning Board held that Landowner satisfied the objective requirements of the Zoning Code for a special exception for the parking lot. Section 911.02 of the Zoning Code[12] allows commercial parking as a special exception in the LNC District, subject to the criteria set forth in the Zoning Code. Section 911.04.A.44(b) requires consideration of: whether the use minimizes disruption to pedestrian movement; whether the curb cut is located at least 60 feet from intersections and other curb cuts; and the impacts from probable traffic generation, hours of operation, noise and light.[13]

---

[12] It states that "Parking, Commercial means an area used or intended to be used for the off-street parking of operable motor vehicles on a temporary basis, other than as accessory parking to a principal use, and excluding parking structures." ZONING CODE §911.02. Parking, Commercial (Limited) is "a Commercial Parking area with less than 25 spaces." *Id*.

[13] Section 911.04.A.44(b) states:

> (b) In LNC and RIV Districts:
>
> Parking, Commercial (limited) uses shall be subject to the following standards in the LNC and RIV Districts:
>
> > (1) The use shall be located to minimize disruption to pedestrian movements;
> >
> > (2) Curb cuts shall be located a minimum of sixty (60) feet from an intersection and sixty (60) feet from other curb cuts; and
> >
> > (3) The approving body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, hours of operation, noise, and light.

ZONING CODE §911.04.A.44(b).

15

The record evidence shows that elimination of the two curb cuts on Butler Street would improve pedestrian movement. Landowner's proposal will improve the existing parking lot by bringing it into compliance with the Zoning Code by moving the Plummer Street curb cut 60 feet away from the intersection with Butler Street. Further, the lot will be improved with the addition of trees, landscaping, fencing on the interior side property line and curb stops for parking spaces. Landowner also demonstrated that traffic generation, hours of operation, noise and light would be limited and comparable to, if not less than, the permitted use as a parking lot. Substantial evidence supported the Zoning Board's findings of fact in this regard, and the trial court erred in reversing its decision.

Nevertheless, Objector contends that Section 922.04.E.3.e(i) of the Zoning Code states that "[n]o corner lot shall be used as off-street parking unless the parking area serves as a shared parking area,"[14] ZONING CODE §922.04.E.3.e(i), and the Zoning Board simply ignored this requirement. Objector, however, did not raise this issue before the Zoning Board; therefore, it is waived. Even so, Landowner's

---

[14] Section 914.07.G.1 of the Zoning Code states, in relevant part:

> The Zoning Administrator shall be authorized, in accordance with the Administrator Exception provisions of [Section] 922.08 to consider and approve the following alternatives to providing off-street parking spaces on the site of the subject development if the applicant demonstrates to the satisfaction of the Zoning Administrator that the proposed plan will result in a better situation with respect to surrounding neighborhoods, citywide traffic circulation and urban design than would strict compliance with otherwise applicable off-street parking standards.
>
> > (a)  Shared Parking
> >
> > It is the City's policy to encourage efficient use of land and resources by allowing users to share off-street parking facilities for multiple use developments or for uses that are located near one (1) another and that have different peak parking demands or different operating hours….

Zoning Code §914.07.G.1(a).

16

proposal satisfies the shared use requirement. The off-site parking lot will be used by customers and employees of the food court's multiple vendors, thus satisfying the shared parking requirement in Section 922.04.E.3.e(i).

Objector, as an alternative basis for affirmance, challenges the grant of a dimensional variance from the 10-foot setback requirement for an off-street parking lot. Section 914.09.A.1 of the Zoning Code provides:

> Off-street parking areas shall be located so as to minimize their adverse impact on the visual environment. To the maximum extent possible, off-street parking areas shall not be visible from a public street, and in no case shall a *surface parking lot in NDI, LNC or UNC zoning district be located within ten (10) feet of the street right-of-way*.

ZONING CODE §914.09.A.1 (emphasis added). The Zoning Board held that the triangular shape of the lot, with frontages on both Butler and Plummer Streets, precluded strict compliance with the full 10-foot setback requirement. *Bethlehem Manor Village, LLC v. Zoning Hearing Board of City of Bethlehem* (Pa. Cmwlth., No. 501 C.D. 2010, filed March 17, 2011), slip op. at 6 ("Irregularity, narrowness, shallowness of lot size or shape, or exceptional topography can constitute hardship and may be legally sufficient to support a variance.") (unreported).[15] Further, when the parcel was developed as a car lot, the setback from the Plummer Street right-of-way was zero feet. Given these circumstances, the Zoning Board determined that a dimensional variance from the 10-foot setback requirement to allow a 1.5-foot setback from Plummer Street would have no impact on the surrounding properties or on the traffic in the area. The Zoning Board's finding that Landowner established a hardship is supported by substantial evidence, and we will not disturb it.

---

[15] Under Section 414(a) of this Court's Internal Operating Procedures, an unreported opinion issued after January 15, 2008, may be cited for its persuasive value. 210 Pa. Code §69.414(a).

## Conclusion

We hold that the Zoning Board's findings made in support of its grant of the special exception for an Alternative Parking Plan and its grant of a variance from the parking lot's setback requirement were supported by substantial evidence. The trial court erred in reversing the decision of the Zoning Board.[16]  Accordingly, we reverse the order of the trial court and reinstate the Zoning Board's decision.

_____
MARY HANNAH LEAVITT, President Judge Emerita

---

[16] In its brief, Landowner addresses two procedural arguments that Objector raised before the trial court.  First, Objector argued that the Alternative Parking Plan was not advertised in accordance with the Zoning Code, which requires that a sign be posted on the site and written notice be sent to property owners in the neighborhood and adjacent to the parking area.  ZONING CODE §914.07.D.  Objector contends that notice was not posted on the site or mailed to the neighbors.  Second, Objector argues that the Alternative Parking Plan was not submitted to the Planning Director for a report as required by the Zoning Code.  *See* ZONING CODE, §914.07.G.2(a)(3).  He contends that the work of the Planning Department staff is not a valid substitute for the Planning Director's report.  The trial court did not address either of these issues in its decision, and Objector did not file a cross appeal.  Therefore, these issues are waived and will not be addressed by this Court.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Raymond Czachowski | : | **CASES CONSOLIDATED** |
| | : | |
| v. | : | No. 1344 C.D. 2020 |
| | : | No. 1359 C.D. 2020 |
| Zoning Board of Adjustment of the | : | |
| City of Pittsburgh, City of Pittsburgh | : | |
| and LPGM Limited, LLC | : | |
| | : | |
| Appeal of: LPGM Limited, LLC | : | |

# **O R D E R**

AND NOW, this 2nd day of March, 2022, the November 19, 2020, order of the Court of Common Pleas of Allegheny County is REVERSED, and the February 6, 2020, decision of the City of Pittsburgh Zoning Board of Adjustment is REINSTATED.

MARY HANNAH LEAVITT, President Judge Emerita