IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas H. Ungard, Jr.       :
      :
      v.       :    No. 368 C.D. 2018
      :    Argued: April 11, 2019
Williamsport Bureau of Police Pension   :
Board,       :
      Appellant       :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE MICHAEL H. WOJCIK, Judge (P.)
             HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT              FILED: May 30, 2019

The Williamsport Bureau of Police Pension Board (Pension Board) appeals an order of the Court of Common Pleas of Lycoming County (trial court) that reversed the Board's decision to forfeit the pension of former City of Williamsport (City) police officer Thomas Ungard. In ruling in Ungard's favor, the trial court held that the City did not offer substantial evidence that the crimes for which he was convicted, tampering with public records and obstructing the administration of law or other governmental function, were related to his public employment.[1] Discerning no error by the trial court, we affirm.

Ungard was employed by the City of Williamsport as a police officer from 1993 until he was suspended in 2006 and discharged in 2014. During his tenure on the police force, Ungard also served as a member and coordinator of the Lycoming County Drug Task Force, which frequently obtained vehicles through

---

[1] After the briefs were filed in this appeal, the Superior Court reversed Ungard's conviction for obstructing the administration of law or other governmental function. *Commonwealth v. Ungard* (Pa. Super., No. 1209 MDA 2017, filed March 6, 2019). Because that crime is no longer a basis for forfeiture of Ungard's pension, it will not be discussed further. The Superior Court affirmed the trial court's denial of Ungard's motion to set aside the tampering convictions as *de minimis*.

criminal and civil forfeiture proceedings. Following an investigation by the Attorney General into the disposition of forfeited vehicles, the Commonwealth lodged criminal charges against Ungard in 2007. On July 22, 2011, a jury convicted Ungard of two misdemeanor counts of tampering with public records or information, 18 Pa. C.S. §4911, and one misdemeanor count of obstructing the administration of law or other governmental function, 18 Pa. C.S. §5101. The jury found Ungard not guilty of nine other criminal charges.

By letter of February 8, 2017, the City Solicitor notified Ungard that the Pension Board planned to hold a meeting to determine whether his pension should be forfeited under the Pennsylvania Employee Pension Forfeiture Act (Pension Forfeiture Act).[2] On March 30, 2017, the Pension Board held a hearing, at which Ungard represented himself and was the sole witness.

The City offered into evidence the certified records from Ungard's criminal case, including the verdict sheet convicting him of two misdemeanor counts of tampering with public records or information, 18 Pa. C.S. §4911. Because Ungard's crimes are listed in Section 2 of the Pension Forfeiture Act as criminal offenses that can trigger a pension forfeiture, the City argued that forfeiture of his pension was mandatory. 43 P.S. §1312.[3] The parties stipulated that Ungard's contributions to his pension totaled $40,643.87.

---

[2] Act of July 8, 1978, P.L. 752, *as amended*, 43 P.S. §§1311-1315.

[3] Section 2 of the Pension Forfeiture Act defines "Crimes related to public office or public employment" as follows:

> Any of the criminal offenses as set forth in the following provisions of Title 18 (Crimes and Offenses) of the Pennsylvania Consolidated Statutes or other enumerated statute when committed by a public official or public employee through his public office or position or when his public employment places him in a position to commit the crime:

* * *

2

Section 3922 (relating to theft by deception) when the criminal culpability reaches the level of a misdemeanor of the first degree or higher.

Section 3923 (relating to theft by extortion) when the criminal culpability reaches the level of a misdemeanor of the first degree or higher.

Section 3926 (relating to theft of services) when the criminal culpability reaches the level of a misdemeanor of the first degree or higher.

Section 3927 (relating to theft by failure to make required disposition of funds received) when the criminal culpability reaches the level of a misdemeanor of the first degree or higher.

Section 4101 (relating to forgery).

Section 4104 (relating to tampering with records or identification).

Section 4113 (relating to misapplication of entrusted property and property of government or financial institutions) when the criminal culpability reaches the level of misdemeanor of the second degree.

Section 4702 (relating to threats and other improper influence in official and political matters).

Section 4903(a) (relating to false swearing).

Section 4904 (relating to unsworn falsification to authorities).

Section 4906 (relating to false reports to law enforcement authorities).

Section 4910 (relating to tampering with or fabricating physical evidence).

*Section 4911 (relating to tampering with public records or information).*

Section 4952 (relating to intimidation of witnesses or victims).

Section 4953 (relating to retaliation against witness, victim or party).

Section 5101 (relating to obstructing administration of law or other governmental function).

Section 5301 (relating to official oppression).

Section 5302 (relating to speculating or wagering on official action or information).

3

Ungard testified that membership on the Drug Task Force is voluntary and is done through the District Attorney's office. He acknowledged that he was "on the Task Force by virtue of [his] public employment with the City of Williamsport." Notes of Testimony, 3/30/2017, at 36 (N.T. __); Reproduced Record at 106a (R.R. __). His position of coordinator of the task force was a "designation of authority" by the District Attorney. *Id.* at 26, 31; R.R. 96a, 101a. As coordinator, he supervised the sale of seized property and performed clerical tasks such as paying bills, keeping records and sending reports to the Attorney General. He received no monetary compensation as coordinator but there were perquisites such as a car, telephone, computer, an office and access to the District Attorney's office. He was not eligible for a pension by virtue of his Drug Task Force position. Ungard acknowledged that during a typical shift as a police officer he would perform task force coordinator work. Any overtime he incurred with the Drug Task Force was paid by the City through his employment as a police officer. He stated it was impossible to separate his work as coordinator from his field work as a regular member of the task force.

Ungard testified that his conviction for tampering with public records related to the sale of two vehicles that had been seized by the Drug Task Force through civil asset forfeiture proceedings. He acknowledged that he was aware the vehicles were for sale because, as coordinator of the Drug Task Force, he was tasked with "getting rid of" forfeited vehicles. N.T. 61; R.R. 131a. When asked by a Pension Board member whether he, acting on behalf of the District Attorney, sold a car to a person who then sold it back to Ungard, Ungard responded affirmatively. N.T. 61-62; R.R. 131a-32a. When Ungard purchased each vehicle, he recorded an

43 P.S. §1312 (emphasis added).

4

incorrect purchase price on the Department of Transportation's Form MV-4ST. In Ungard's words, "[t]he jury found that … [t]he money didn't actually change hands. They [sic] said that that is an un – false entry, and I was found guilty of it." N.T. 55; R.R. 125a. Ungard testified that his purchases were "private" transactions and "ha[d] nothing to do with [his] duties as a … Drug Task Force coordinator or Williamsport Bureau of Police [officer]." N.T. 51; R.R. 121a.

The Pension Board held that Ungard's pension should be forfeited. It explained that the crime for which Ungard was convicted, *i.e.*, tampering with public records, is a crime enumerated in the Pension Forfeiture Act. The Board found, as fact, that in his work on the Drug Task Force, Ungard acted as a public employee because he was compensated by the City for this work. Additionally, as coordinator of the Drug Task Force he was a public official because he was appointed to that position by the District Attorney. The Board further found that Ungard's duties as a police officer and member and coordinator of the Drug Task Force placed him in a position to commit the crime of tampering with public records. In accordance with these findings, the Board ordered Ungard's pension benefits to be forfeited and his contributions refunded without interest. Ungard appealed to the trial court.

The trial court agreed with the Pension Board's conclusion that Ungard was a public employee or public official when he performed tasks for the Drug Task Force. The trial court noted that Ungard was permitted to do his task force work while he was on duty as a police officer and, as a result, was paid by the City for that time and for work beyond his regular hours. Nevertheless, the trial court held that there was not substantial evidence to support the Pension Board's findings that the crimes for which Ungard was convicted were related to his role as Drug Task Force

5

coordinator or that serving as coordinator placed him in a position to commit the crimes.

In so holding, the trial court observed that Ungard was the only witness to testify at the hearing:

> Mr. Ungard testified that he was convict[ed] for putting a false dollar amount on two pink slips (Form MV-4ST) when he obtained title of two vehicles from lawful title owners of the vehicles. Mr. Ungard testified that the vehicles had previously been forfeited, titled to the District Attorney, and then transferred by the drug task force to individuals who obtained lawful title. The prior history of the vehicles had no bearing on the crimes committed, that Mr. Ungard listed a false dollar amount as the purchase price from those individuals on the MV-4ST forms.

Trial Court Opinion, 2/28/2018, at 4. The trial court concluded that Ungard's employment as a police officer or as coordinator of the Drug Task Force did not put him in the position to commit the precise crimes for which he was convicted, *i.e.*, filing false MV-4ST forms. Because all taxes and fees were paid, there was no "victim." The false entries on the MV-4ST forms did not defraud anyone, most particularly Ungard's public employer.[4] Further, each vehicle had been lawfully titled in the third party when Ungard purchased it. The trial court reversed the Pension Board's adjudication, and the Pension Board appealed to this Court.

On appeal,[5] the Pension Board argues that the trial court erred in concluding that Ungard's public employment did not place him in a position to

---

[4] The trial court also held that the obstruction of justice charge arose from conduct that took place after Ungard's suspension from the police force and, thus, could not be a basis for pension forfeiture. As noted previously, the Superior Court has set aside the obstruction conviction, so we need not consider it further.

[5] This Court's review determines whether the Pension Board violated Ungard's constitutional rights, whether it committed an error of law or whether necessary findings of fact are supported

6

commit the crime of tampering with public records or information. The Board contends that, contrary to the trial court's conclusion, there was substantial evidence in the record to support its finding that the crime for which Ungard was convicted was related to Ungard's role as Drug Task Force coordinator.

In enacting the Pension Forfeiture Act, "the legislature sought to promote integrity in public employment by imposing a forfeiture provision that would deter acts of criminal misconduct, thereby encouraging public employees to maintain standards of conduct deserving of the public's trust." *Mazzo v. Board of Pensions and Retirement of City of Philadelphia*, 611 A.2d 193, 196 (Pa. 1992). Section 3(a) of the Pension Forfeiture Act provides that the pension of a "public official or public employee" shall be forfeited upon a conviction for "any crime related to public office or public employment." 43 P.S. §1313(a).[6] Section 2 of the Pension Forfeiture Act[7] identifies the specific crimes that will result in forfeiture of a pension. The listed crimes include, *inter alia*, tampering with public records or information, 18 Pa. C.S. §4911.[8] Some of the enumerated crimes, such as bribery in

by substantial evidence. *Wiggins v. Philadelphia Board of Pensions and Retirement*, 114 A.3d 66, 71 n.4 (Pa. Cmwlth. 2015).

[6] Specifically, Section 3(a) states as follows:

> (a) Notwithstanding any other provision of law, no public official or public employee nor any beneficiary designated by such public official or public employee shall be entitled to receive any retirement or other benefit or payment of any kind except a return of the contribution paid into any pension fund without interest, if such public official or public employee is convicted or pleads guilty or no defense to any crime related to public office or public employment.

43 P.S. §1313(a).

[7] See n. 3, *supra*.

[8] Section 4911 of the Crimes Code defines the crime of "tampering with public records or information" as follows:

> (a) Offense defined.--A person commits an offense if he:
>> (1) knowingly makes a false entry in, or false alteration of, any record, document or thing belonging to, or received or kept by, the government for

official and political matters, 18 Pa. C.S. §4701, can only be committed by one in public office or employment. Others, such as perjury, 18 Pa. C.S. §4902, could be committed in a private context. However, only where the crime listed in Section 2 relates to public office or employment will it result in a loss of a pension. Section 2 specifies that an enumerated crime relates to public office or employment

> when committed by a public official or public employee through his public office or position or when his public employment places him in a position to commit the crime[.]

43 P.S. §1312. "Pension forfeiture is not favored and, thus, pension forfeiture statutes are strictly construed." *Wiggins v. Philadelphia Board of Pensions*, 114 A.3d 66, 72 (Pa. Cmwlth. 2015).

As noted, the Pension Board argues that the trial court erred in concluding that the City failed to prove Ungard's public employment placed him in a position to commit the crime of tampering with public records. The Board contends that there was substantial evidence to support its finding that Ungard's crime was sufficiently related to his role as Drug Task Force coordinator. We disagree.

---

> information or record, or required by law to be kept by others for information of the government;
>
> (2) makes, presents or uses any record, document or thing knowing it to be false, and with intent that it be taken as a genuine part of information or records referred to in paragraph (1) of this subsection; or
>
> (3) intentionally and unlawfully destroys, conceals, removes or otherwise impairs the verity or availability of any such record, document or thing.
>
> (b) Grading.--An offense under this section is a misdemeanor of the second degree unless the intent of the actor is to defraud or injure anyone, in which case the offense is a felony of the third degree.

18 Pa. C.S. §4911.

The problem with the Pension Board's case is the record, or lack thereof. The City elected not to present any evidence at the Pension Board hearing, except for Ungard's criminal docket sheet. Ungard's testimony established that there were two transactions for each vehicle: (1) the sale from the District Attorney to the third-party buyer, and (2) the sale from the third party to Ungard. Ungard acknowledged that he was "found guilty" of making a "false entry" on the MV-4ST forms, which are public records, when he purchased each of the cars. N.T. 55; R.R. 125a. He testified that he did so not as a public employee but as the private buyer of the vehicles from their lawful title owners, who were also private citizens. The trial court agreed, concluding that the history of the vehicles prior to them being lawfully titled in the third-party "strawmen" was irrelevant.[9]

The Pension Forfeiture Act must be narrowly construed because forfeiture is not favored. This narrow construction applies to Section 3(a)'s requirement that a conviction must be for a "crime related to public office or public employment." 43 P.S. §1313(a). The City presented no evidence to establish the precise connection between Ungard's crimes and his public employment. The transactions were, as the trial court found, between two private parties. Because the record did not support a forfeiture of Ungard's pension under Section 3(a) of the Pension Forfeiture Act, we affirm the trial court's order setting aside the Pension Board's decision.

_____
MARY HANNAH LEAVITT, President Judge

---

[9] Ungard may have been involved in transferring the vehicles to the strawmen. However, those transfers were not criminal because, as the trial court emphasized, Ungard was acquitted of felony tampering charges.

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Thomas H. Ungard, Jr. | : | |
| | : | |
| v. | : | No. 368 C.D. 2018 |
| | : | |
| Williamsport Bureau of Police Pension Board, | : | |
| | : | |
| Appellant | : | |

## **O R D E R**

AND NOW, this 30th day of May, 2019, the order of the Court of Common Pleas of Lycoming County in the above-captioned matter dated March 6, 2018, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge