IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jamie Quinn,
               Appellant        :

                                    :

      v.                   :  No. 1226 C.D. 2020
                                      :  Submitted:  May 16, 2022

Police Pension Commission     :
of the City of Sunbury          :

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE STACY WALLACE, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
JUDGE CEISLER                                FILED:  July 12, 2022

Appellant Jamie Quinn (Quinn) challenges the Court of Common Pleas of Northumberland County's (Common Pleas) October 29, 2020 order that affirmed Appellee Police Pension Commission of the City of Sunbury's (Pension Commission) January 24, 2019 decision. In this decision, the Pension Commission determined that Quinn had forfeited the pension benefits she had accrued after working as a Sunbury police officer for 22 years, due to her being convicted of conspiracy to tamper with or fabricate physical evidence.[1] After careful review, we reverse.

---

[1] Per Section 4910 of the Crimes Code,

> A person commits a misdemeanor of the second degree if, believing that an official proceeding or investigation is pending or about to be instituted, he:
>
> > (1)   alters, destroys, conceals or removes any record, document or thing with intent to impair its verity or availability in such proceeding or investigation; or

**(Footnote continued on next page…)**

## I. Background

The relevant facts in this matter are as follows. The Sunbury Police Department (Department) provided Quinn with a cell phone, which was to be used only to assist her in fulfilling her duties as a police officer, except in certain emergency situations or with departmental approval. *See* Reproduced Record (R.R.) at 100a-01a, 109a, 161a. Despite this requirement, Quinn gave her Department-issued phone to her then-minor son in October 2016 for his personal use, in order to replace another cell phone that had been confiscated by her son's father.[2] *Id.* at 127a-30a, 161a-62a. Quinn did this in order to ensure that she would be able to stay in touch with her son.

---

> (2) makes, presents or uses any record, document or thing knowing it to be false and with intent to mislead a public servant who is or may be engaged in such proceeding or investigation.

18 Pa. C.S. § 4910. As for conspiracy, Section 903(a) of the Crimes Code states that,

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> > (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
> >
> > (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

*Id.* § 903(a).

[2] The precise status of the relationship between Quinn and her son's father is not clear, but the record does indicate that they were not living in the same household.

On November 29, 2016, Quinn's son texted his mother and asked for her help with a sexting[3] and revenge porn[4] situation involving the son's then-girlfriend, who was also a minor at that point. *Id.* at 132a, 163a; Quinn's Br., App. 5. Quinn's son explained to his mother that, unbeknownst to him, his girlfriend had texted a topless photo of herself to another teenaged male. *Id.* at 132a, 163a; Quinn's Br., App. 5. His girlfriend had then stopped communicating with the other male, who retaliated by resending the photo to other individuals on November 28, 2016. *Id.* at 132a, 163a; Quinn's Br., App. 5. Shortly thereafter, Quinn's son found out about the photo from a third party and turned to his mother for guidance. *Id.* at 132a-34a, 163a; Quinn's Br., App. 5. During the course of their conversation, Quinn realized that her son had potentially received the topless photo on her Department-issued phone, whereupon she texted him, "Oh God! That picture was never on that phone was it? Either way make sure you don't have a copy of it and never admit to anyone else that you've actually seen it." *Id.* at 133a, 164a; Quinn's Br., App. 5.

Two days later, on December 1, 2016, the Pennsylvania State Police initiated an investigation into the situation and sent a state trooper to a local high school to speak with the revenge porn victim and a number of other juveniles, including Quinn's son. R.R. at 81a. Prior to interviewing Quinn's son, the trooper called Quinn around 1:00 p.m. and asked for her permission to do so, as well as to search the son's phone. *Id.* at 82a, 164a. During this conversation, Quinn told the trooper that her

---

[3] "Sexting" is "the sending of sexually explicit messages or images by cell phone." *Sexting*, Merriam-Webster.com. https://www.merriam-webster.com/dictionary/sexting (last visited July 11, 2022).

[4] "Revenge porn" is defined as "sexually explicit images of a person posted online without that person's consent especially as a form of revenge or harassment." *Revenge porn*, Merriam-Webster.com. https://www.merriam-webster.com/dictionary/revenge%20porn (last visited July 11, 2022).

3

son's phone was actually the Department's property. Quinn also stated that the topless photo had been on the phone for approximately two days, and that she would get in trouble with the Department if the trooper seized the phone that day. *Id.* at 81a-82a. Nevertheless, Quinn allowed the trooper to search the phone for the photo and interview her son. *Id.* at 82a.[5]

Shortly thereafter, Quinn had a text conversation with her son, which included the following exchanges:

> [Quinn's Son:] Hey ma, I have to bring the other phone to the [police] station.
>
> [Quinn:] That's no problem. I can pick you up and take you over there if you would like. And I just called work and it is OK for me to take the day off tomorrow so if you want to spend the night and take my car tomorrow if you want to go to school that would be fine. And I can take you over to the state police [barracks] with the other phone.
>
> But I will explain that all, use that as a general excuse to have the phone, and go through anything that may be incriminating
>
> [Quinn's Son:] Yup thats [sic] my plan
>
> [Quinn:] OK. I would happy [sic] be happy to be there with you through all of that if you would like. What do you think?
>
> [Quinn's Son:] Thats [sic] fine
>
> [Quinn:] When would you like me to pick you up?
>
> [Quinn's Son:] Ill [sic] let you know
>
> . . . .
>
> [Quinn:] ok [sic]. Delete this next message this message that I'm sending to you now. But I really don't want you to admit that the picture was ever on that phone. Seriously! Delete this because the trooper and I had a conversation about the text I sent you saying don't admit. . . Anyway.

[5] Quinn also contemporaneously contacted Captain Steven Bennick, one of her Department superiors, and gave him the details about the unfolding situation. R.R. at 98a-99a, 101a-03a.

4

> You just tell him that they need to look at it to be sure the picture was never on that phone. Seriously—delete most of these text [sic] we just sent!

Quinn's Br., App. 5.

The trooper was unable to find the photo on the son's phone and, as a result, called Quinn after he returned to his barracks and informed her that he would need to seize the phone as evidence in his ongoing investigation. R.R. at 82a. In response, Quinn asked the trooper if he had seen the aforementioned text message, in which she had directed her son to delete the photo and to never admit that he had seen it. *Id.* The trooper did not answer Quinn's question at that point, but ultimately found the text referenced by Quinn after securing the phone and searching its contents a second time. *Id.*

As a result of her actions, Quinn was charged on June 2, 2017, with multiple crimes including diversion of services, theft by unlawful taking of movable property, tampering with or fabricating physical evidence, and conspiracy to tamper with or fabricate physical evidence. *Id.* at 63a-66a. The Department then fired Quinn on August 28, 2017. *Id.* at 4a, 61a-62a. Quinn's firing was due to the criminal charges that had been lodged against her and not for giving her son her work cell phone; in fact, according to Quinn's supervising officer, this action would have been deemed a minor violation of the Department's policy manual, one that would have likely resulted in the issuance of a written reprimand. *See id.* at 121a-22a. Quinn's criminal case then proceeded to a jury trial. On March 27, 2018, the jury convicted Quinn of one count of conspiracy to tamper with or fabricate physical evidence.[6] *Id.* at 4a,

---

[6] Quinn was acquitted of theft by unlawful taking of movable property and Common Pleas granted her motion to dismiss the remaining two charges. *See id.* at 160a, 184a-85a.

184a-85a. Thereafter, on June 20, 2018, Common Pleas sentenced Quinn to 24 months of intermediate punishment.[7] *Id.* at 71a.

After her criminal trial concluded, Quinn filed a claim with Sunbury's Police Pension Fund regarding her vested pension benefits that she had accrued through her twenty-two years as a Sunbury police officer. *Id.* at 4a; *see id.* at 161a. On August 28, 2018, the Pension Commission's attorney notified Quinn that her claim had been denied, because her conviction had rendered her ineligible for such benefits due to the dictates of the Public Employee Pension Forfeiture Act (Pension Forfeiture Act).[8]

---

[7] Intermediate punishment is similar to probation in some respects. Both terms refer, broadly speaking, to a set of measures [imposable] by the court which restrict an offender's liberty but fall short of traditional incarceration. There is also a substantial overlap in the range of options available under either program[.] . . . Additionally, whether an offender is serving a sentence of probation or intermediate punishment, if he violates the assigned conditions, the order of probation or intermediate punishment (as the case may be) may be revoked and a new sentence imposed. . . .

Significantly, however, the General Assembly's intention in adopting intermediate punishment in this Commonwealth was not merely to establish another form of probation parallel to the one that already existed. Rather, as the Superior Court has explained:

> The [L]egislature's intent was: to give judges another sentencing option which would lie between probation and incarceration with respect to sentencing severity; to provide a more appropriate form of punishment/ treatment for certain types of non-violent offenders; to make the offender more accountable to the community; and to help reduce the county jail overcrowding problem while maintaining public safety.

*Com*[.] *v. Philipp*, 709 A.2d 920, 921 (Pa. Super. 1998) (quoting SENTENCING IN PENNSYLVANIA 1990: 1990-1991 ANNUAL REPORT OF THE PENNSYLVANIA COMMISSION ON SENTENCING 8).

*Com. v. Wegley*, 829 A.2d 1148, 1152-53 (Pa. 2003) (footnote and some internal citations omitted).

[8] Act of July 8, 1978, P.L. 752, *as amended*, 43 P.S. §§ 1311-1315.

*Id.* at 186a-87a. Quinn administratively appealed this denial on September 21, 2018. The Pension Commission issued a decision on January 24, 2019, denying Quinn's pension benefits request on the same basis. *Id.* at 188a-89a. Quinn appealed the Pension Commission's decision to Common Pleas, which affirmed the Pension Commission on October 29, 2020.[9] Quinn then filed the instant appeal with our Court.

## II. Discussion

Quinn presents two arguments for our consideration. First, Quinn argues that Common Pleas erroneously concluded that a conviction for the crime of *conspiracy* is a valid basis under the Pension Forfeiture Act for stripping an individual of their pension benefits. Quinn's Br. at 18-21. Second, Quinn asserts that, even if we fail to agree with her first argument, it remains that Common Pleas abused its discretion by finding that there was a "sufficient nexus" between the crime she was convicted of

---

[9] The parties stipulated to the fact that the record developed before the Pension Commission was incomplete. They agreed to submit additional evidence to Common Pleas and have the matter reviewed *de novo*. *Id.* at 6a; *see* 2 Pa. C.S. § 754(a) ("In the event a full and complete record of the proceedings before the local agency was not made, the court may hear the appeal *de novo*, or may remand the proceedings to the agency for the purpose of making a full and complete record or for further disposition in accordance with the order of the court.").

Quinn asserts that our standard of review in this matter is to "determine[] whether the Pension Commission violated Quinn's constitutional rights, whether it committed an error of law or whether necessary findings of fact are supported by substantial evidence." Quinn's Br. at 3. That would have been the proper standard of review if Common Pleas had not taken additional evidence and, instead, had merely considered the Pension Commission's January 24, 2019 decision on the record created before that administrative agency. *See* 2 Pa. C.S. § 754(b). However, where, as here, a court of common pleas considers such a matter *de novo*, we instead review *that court's decision* to determine "whether . . . constitutional rights have been violated [or] whether the lower court manifestly abused its discretion or committed an error of law." *McLaughlin v. Ctr. Cnty. Hous. Auth.*, 616 A.2d 1073, 1074 n.3 (Pa. Cmwlth. 1992). "An abuse of discretion occurs when findings are not supported by substantial evidence. . . . Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tower Access Grp., LLC v. S. Union Twp. Zoning Hearing Bd.*, 192 A.3d 291, 299 n.3 (Pa. Cmwlth. 2018) (internal citation omitted).

committing and her employment as a Sunbury police officer. *Id.* at 21-29. As such, she maintains that Common Pleas erred by affirming the Pension Commission's January 24, 2019 decision. We address each argument in turn.

> In enacting the Pension Forfeiture Act, "the legislature sought to promote integrity in public employment by imposing a forfeiture provision that would deter acts of criminal misconduct, thereby encouraging public employees to maintain standards of conduct deserving of the public's trust." *Mazzo v. [Bd.] of Pensions and Ret[.] of City of Philadelphia*, . . . 611 A.2d 193, 196 ([Pa.] 1992). Section 3(a) of the Pension Forfeiture Act provides that the pension of a "public official or public employee" shall be forfeited upon a conviction for "any crime *related to public office or public employment*." 43 P.S. § 1313(a).

*Ungard v. Williamsport Bureau of Police Pension Bd.*, 210 A.3d 1121, 1125 (Pa. Cmwlth. 2019).[10] The version of Section 2 of the Pension Forfeiture Act that was in effect at the time of Quinn's criminal activity defined "[c]rimes related to public office or public employment" as being any of a number of listed offenses derived from the Crimes Code or other Pennsylvania statutes, as well as similar federal crimes. *See* former 43 P.S. § 1312 (2004). Among these crimes is "Section 4910 [of the Crimes Code] (relating to tampering with or fabricating physical evidence)." *Id.* In addition, the applicable statutory language made clear that conviction for such a crime necessitated pension forfeiture only "when committed by a public official or public employee through his public office or position or when his public employment places him in a position to commit the crime[.]" *Id.*

It is well established that "[p]ension forfeiture is not favored and, thus, pension forfeiture statutes are strictly construed." *Wiggins v. Philadelphia Bd. of Pensions & Ret.*, 114 A.3d 66, 72 (Pa. Cmwlth. 2015). However, there are narrow

---

[10] Quinn does not dispute that, as a police officer, she constituted a "public employee" for purposes of the Pension Forfeiture Act. *See* Quinn's Br. at 21, 24-28.

8

exceptions to this rule of construction. To that end, while the former version of Section 2 does not state that a person may be stripped of their pension if they are convicted of conspiracy to commit one of the crimes expressly listed therein, as Quinn was, we have nevertheless concluded that forfeiture for such a conspiracy conviction is indeed permitted by the Pension Forfeiture Act. As we explained in *Luzerne County Retirement Board v. Seacrist*,

> [t]he main difference between inchoate crimes [like attempt and conspiracy] and the underlying crimes to which they relate is the execution of the underlying crime itself.
>
> . . . .
>
> Attempt and conspiracy both require the same *mens rea* as the underlying substantive crimes. Attempt and conspiracy are treated as crimes of the same grade and degree of the most serious offense which is attempted or is an object of the conspiracy. Section 905 of the Crimes Code, 18 Pa. C.S. § 905. Both carry the same maximum sentences as the underlying crimes to which they relate. [*Id.*]; *Com*[.] *v. Hoke*, . . . 962 A.2d 664 ([Pa.] 2009). Since the crimes of attempt and conspiracy are subject to the same criminal sentences as the underlying substantive crimes, it logically follows they would also be subject to the same civil consequences. To conclude otherwise would defeat the very purpose of the Pension [Forfeiture] Act. Hence, any public official or public employee who is convicted of attempting or conspiring to commit any of the criminal offenses enumerated in the Pension [Forfeiture] Act is subject to pension forfeiture under [that law].

988 A.2d 785, 788-89 (Pa. Cmwlth. 2010) (internal footnote omitted).

Quinn acknowledges our holding in *Seacrist*, but asserts that we should overturn that decision, due to the combined effect of the General Assembly's failure to expressly add conspiracy as a forfeiture-eligible crime through its 2004 and 2019 amendments of the Pension Forfeiture Act and the aforementioned requirement that pension forfeiture statutes be strictly construed. *See* Quinn's Br. at 18-21. We

9

decline to accept this argument for several reasons. First, *Seacrist* was decided by our Court in 2010 and, thus, the 2004 amendments were considered in the course of our analysis in that matter, including the fact that those amendments did not modify the Pension Forfeiture Act to explicitly state that conspiracy was a crime that could result in such forfeiture. Second, per Section 1926 of the Statutory Construction Act, "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa. C.S. § 1926. Given that the 2019 amendments applied only to forfeiture-eligible crimes perpetrated on or after March 28, 2019,[11] and Quinn committed the acts that gave rise to her conspiracy conviction in November and December 2016, the changes made through those amendments to the Pension Forfeiture Act are inapplicable to this situation. Finally, even though those 2019 amendments have no substantive bearing on this case, they nevertheless contradict Quinn's argument that conspiracy is not a crime that can result in pension forfeiture. It is understood that "[t]he legislature is presumed to be aware of the construction placed upon statutes by the courts[.]" *City of Philadelphia v. Clement & Muller, Inc.,* 715 A.2d 397, 399 (Pa. 1998).

> When confronted with questions of statutory construction, the words of a statute are to be interpreted in light of antecedent case law, and the legislative intent to effectuate a drastic change in the law is not to be inferred by mere omission and implication. . . . The failure of the General Assembly to change the law which has been interpreted by the courts creates a presumption that the interpretation was in accordance with the legislative intent; otherwise the General Assembly would have changed the law in a subsequent amendment.

*Fonner v. Shandon, Inc.*, 724 A.2d 903, 906 (Pa. 1999) (footnote and internal citations omitted). Accordingly, because the General Assembly did not amend the

---

[11] *See* Section 5 of the Act of March 28, 2019, P.L. 1, No. 1.

Pension Forfeiture Act after *Seacrist* to exclude conspiracy as a crime for which pension forfeiture can occur, the presumption arises that the General Assembly's inaction evinces its agreement with our interpretation of the law. Given that Quinn has failed to rebut this presumption, we have no basis for revisiting our holding from *Seacrist*. In short, a conviction for conspiracy to commit a crime enumerated in Section 2 of the Pension Forfeiture Act remains a legally valid basis for stripping a public employee of their pension benefits.

However, we are persuaded by Quinn's contention that Common Pleas improperly found a sufficient nexus between her criminal activity and her employment as a police officer that would warrant this extreme penalty. It is true that some of the crimes that can serve as a basis for pension forfeiture "can only be committed by one in public office or employment[,]" while others may "be committed in a private context." *Ungard*, 210 A.3d at 1126. The one constant that ties convictions for all such forfeiture-eligible crimes together, though, is that, under the Pension Forfeiture Act, forfeiture cannot occur unless the relevant criminal activity was "committed by a public official or public employee through his public office or position or when his public employment place[d] him in a position to commit the crime[.]" *Former* 43 P.S. § 1312 (2004).

In this instance, Common Pleas acted as the factfinder and determined that

> Quinn was convicted of conspiring with her juvenile son to tamper with her [D]epartment-issued cell phone, which weeks prior she had given to her son to use, in violation of department policies.
>
> Testimony at [Quinn's] criminal trial was that the phone in question was issued to Quinn by the . . . Department for Quinn's use for departmental business, and [for] very proscribed personal use. Quinn stated that she would be in trouble if her employer found out that she had given the phone to her son to use, and if the sexting content was

11

found on the phone. The nexus between the public employee[, *i.e.*, Quinn], the crime, and [Quinn's] public employment [as a police officer has] been established.

Common Pleas Op., 10/29/20, at 2.

However, in light of the requirement that pension forfeiture provisions be construed narrowly, we conclude that, in this specific instance, Common Pleas' application of the Pension Forfeiture Act was not supported by substantial evidence. Though the phone that Quinn gave to her son was Department property, it remains that Quinn did not use it to conspire to tamper with or fabricate physical evidence as part of her responsibilities as a public employee. Instead, Quinn acted in her private capacity as a mother, *using her own personal phone* to take steps to limit the fallout produced by her son's romantic travails. Furthermore, her son's use of the Department-issued phone was completely unrelated to any of Quinn's official duties or responsibilities. Under the Pension Forfeiture Act, a public employee or official does not automatically forfeit their pension simply because their government-issued property was involved in a forfeiture-eligible crime. Rather, given the aforementioned language used in former Section 2, such usage of government-issued property is material to pension forfeiture only where the record reflects that the employee or official also committed the crime through their public position, or that the property they accessed by virtue of their position had more than an incidental connection to the crime's commission. *See former* 43 P.S. § 1312 (2004). As there was no such evidence here, we conclude that Common Pleas abused its discretion when it determined that Quinn's conviction was a sufficient basis under the Pension Forfeiture Act to strip her of her pension benefits.

# III. Conclusion

In light of the foregoing analysis, we reverse Common Pleas' October 29, 2020 order.

_____
ELLEN CEISLER, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jamie Quinn,                   :
           Appellant    :
                      :
     v.                :  No. 1226 C.D. 2020
                      :
Police Pension Commission  :
of the City of Sunbury,     :

## O R D E R

AND NOW, this 12th day of July, 2022, it is hereby ORDERED that the Court of Common Pleas of Northumberland County's October 29, 2020 order is REVERSED.

_____
ELLEN CEISLER, Judge